<hr/>

LUCIEN V. PINNEY ET AL., EXECUTORS, *vs.* KATE C. NEWTON ET AL.

First Judicial District, Hartford, March Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

An obvious general intent of a testator, gathered from the whole will, can rarely be defeated by an inaccuracy or inconsistency in the expression of a particular intent.

Accordingly, where the testator specifically disposed of substantially all the property which he estimated would belong to his estate at his death, and by a subsequent clause disposed of "whatever else in the shape of a 'fund' may belong to my estate," it was *held* that he intended, by this expression, the entire residue of his property; especially in view of a provision that his sole heir at law should in no event take more than the sum of $100 given her by the will.

The testator gave several legatees the sum of $1,000 each, and in a subsequent section gave the like sum to one *H.* In a later paragraph of the same section he gave one half the residue of his estate to the "above named legatees to whom I have in this will bequeathed the sum of only $1,000." *Held* that by this expression *H* was plainly included among the residuary legatees ; and that this conclusion was not weakened by the doubt as to whether she was also included, for a different purpose, under a clause in an earlier section which provided that in case any of the legatees previously named should die before the testator, the sum bequeathed to such decedent should be given "to all the other legatees in this instrument named."

The will authorized the executors to place certain bonds, stocks and sums of money, the life use or income of which was given to several legatees, in trust with some good, chartered security company, for safe keeping, for the collection of principal, dividends and interest, and reinvest-

ment. *Held* that the executors were trustees of these bequests and could properly and safely commit the trust funds to the care and management of a security company such as the will described; and if exercising due care in the selection of such company, and in continuing it as agent, would not be responsible for its defaults in respect to such funds.

[Argued March 6th—decided April 5th, 1895.]

SUIT for the construction of the will of Lyman W. Case, late of Winchester, deceased, brought to the Superior Court in Litchfield County and reserved by that court, *Fenn, J.*, upon the facts stated in the complaint, for the advice of this court.

The testator died in April, 1892, possessed of considerable estate, real and personal. His will, executed February 17th, 1891, was admitted to probate, and the plaintiffs named therein as executors duly qualified. The will contained among others the following clauses :—

" 2. I give and bequeath to my cherished second cousin, Miss S. Elizabeth Gillette of Simsbury, Connecticut, the sum of Five Thousand Dollars, in such 'mortgage notes,' or 'bonds,' as she may select from the 'bonds,' I may have on hand at the time of my death (or in money from sale of 'bonds,' or other property, as she may elect, i. e., 'bonds' or 'money'), to be hers and her heirs forever. At the present time I hold the 'debenture' bonds of the Middlesex Banking Co. of Middletown, Connecticut, to over the amount above named and I would recommend her to select those I also give her for her use as 'pocket money' $300. Three Hundred Dollars, which sum my 'representatives,' executors, or administrators, as the case may be, are authorized hereby to draw from any bank in which I may have money on deposit, and pay over to her:—or she, if she accept the position of executrix, as which she will below herein be named, may draw the same at once. I also give and bequeath to the said S. Elizabeth Gillette the use, interest, or income, during her life time, of 84 shares of the stock of the Naugatuck Railroad Co. of the 'face value' of $8,400, which now pays annually a ten per cent. dividend—or $840, and also the use or interest, and income of $14,000, more of such 'bonds' as she may select, which at

six per cent. would return $840 annually, which together with dividends in the said shares of Naugatuck R. R. Co. stock $840+$840+$300, which the $5000 worth of Middlesex's debentures will, I assume, return her, would give her an income of nearly Two Thousand Dollars a year. I advise, and hereby authorize my executors or administrators, to place the said Naugatuck R. R. Co. stock (per the Co.'s ' certificate ') and the said $14,000 worth of bonds, in trust with the Hartford Security Co., or Connecticut Loan and Security Co., I have not the names of the companies I mean at hand, (or with any good, duly chartered ' Security Co.,' for safe keeping for collection of dividends and interest, and the re-investment of funds, when a ' bond ' is paid up, and for collection of principal sums, of course :—for which services such Security Co., would probably charge not over one and a half or two per cent. of the amounts of interest, etc., actually collected. The said 84 shares of Naugatuck R. R. Co. stock, and the said $14,000 worth of bonds, or their equivalent in money, when paid up belonging to my estate, and their use and income reverting to my estate after the death of the said S. Elizabeth Gillette, I dispose of hereinafter.

"3. I give and bequeath to my aunt, Mrs. Urania W. Wilder, now of Minneapolis, Minnesota, (addressed at present in care of Isaac Bates, Esq., of that city,) the use of $4,000, Four Thousand Dollars, during her life time, said ' use ' or income to be paid to her annually.

"4. I give and bequeath to Mrs. Marie Howland, of Topolobampo, Province of Sinaloa, Mexico, editor at present of a little paper called ' Credit Founcier,' of Sinaloa, the use, or income of ($5,000) Five Thousand Dollars, during her life time, said income to be paid to her annually, and I direct that my executors, or administrators, place said sum of $5,000, as well as the said sum of $4,000 named for my said Aunt Urania in item ' 3,' in charge of some Security Company (as advised in item ' 2 ' hereof) unless they themselves, said executor or administrator, succeed in investing said amounts in some ample, perfectly safe 'securities' which

pay at least 6% (six) per annum within three months after my death.

" 8. I bequeath and devise to my second cousin, S. Elizabeth Gillette, named in item ' 2,' hereof, in additon to my bequest to her in said item ' 2 ' all my real estate, situate south and westward of the Naugatuck Railroad in Winsted, *and* Winchester, Conn., generally known as Highland Park, and which land belonged for the most part to my late mother, who received the same from my late father, Dr. Lyman Case, through Orlow D. Hunt, (grantee and grantor) and who (my mother) duly sold and conveyed to me, as will be made clear by deeds, which will readily be found among my papers,—or by reference to the records of the Town of Win-- chester ; and if my cousin, the said S. Elizabeth Gillette, shall be *unwilling* to accept the charge and care of so many rocky acres (as I would advise her to be, ' to be frank ') then I direct that so much of the same as is desirable on the east side of said land, comprising the ' Cabin ' and the ' brook,' which runs through the lower part, be set off to her, together with the ' hemlock grove,' and all included within the fence on the eastward of the old ' dancing platform ' spot—and the rest, the pasture grounds, ' Mount Case,' etc., be sold for whatever fair price it will bring, and the avails of sale be given her, my said cousin, for ' pin money.'

"11. In view of the enactment by the last legislature of the State of Connecticut of a law which I consider unjust and extortionate, I have already (fearing that I may die within the jurisdiction of Connecticut, and that my estate will be administered° upon under its law) in order to avoid said unjust law, to wit, the ' Collateral Inheritance Tax Act,' passed to some others in trust for my use during my life, however, certain bonds, and landed properties—the latter situate in states and countries beyond the jurisdiction of infamous Connecticut. These I shall probably in no case recall, though some of the same may revert to me by the death of a conditional donee, or grantee; but aside from these, I judge (from a careful estimate made yesterday) I shall be likely to leave at my death more than enough to pay

all the positive or direct legacies made in the foregoing items hereof, and leave a balance to the credit of my estate, without the sale of any other real estate I have (besides Highland Park)—in Winsted, or Winchester. So the homestead I now occupy—which is to become the property of the Connecticut Baptist Convention, if on the second of June, 1891, they pay therefor $5,400, and the ' office house,' opposite my homestead, together with the strip of land running to the foundation wall of the house next east of said ' office house,' may not need to be utilized to make out the sum sufficient to dis charge all the legacies—but they may. I therefore direct— that, first, all my bequests in manner and form as above written to my cousin, Miss S. Elizabeth Gillette, be first regarded in every respect, both bequests and devises—I mean and next what I had overlooked, to wit, the following item be regarded second in turn to wit.

" 12. I give and bequeath to my niece, Mrs. Kate C. Newton, wife of Allen Newton, of Hartford, Connecticut, the sum of One Hundred Dollars ($100). I would bequeath to her a larger sum—indeed I might have given her ten thousand dollars, a sum once considered by my late mother and myself as eventually to be given by her, my mother or by myself, to the said Kate—had she, the said Kate, deported herself toward my mother in the latter years of her, my late mother's life, affectionately and kindly, or with the manifest respect and appreciation due from a grandchild to a worthy and noble woman, her grandmother. But the said Kate, unfortunately for herself, so conducted as to fail to command her grandmother's esteem—a statement of which fact is set forth at considerable length in the last will of her grandmother, Mrs. Emily W. Case, which will my executors may find among my papers—and which was not presented for probate for two reasons. 1, because my late mother died leaving no property, having in 1884 assigned to me all ' bonds,' *choses in action,* etc.—and all household furniture—by bill of sale, duly executed—(at another later time) and having from time to time conveyed to me her real estate in this State, and in Iowa, and other States so, in fact, ' everything ' was

mine save the interest on certain bonds, which interest she reserved to herself for her own use during her lifetime. She also received the dividends on certain bank stocks and railroad stocks which were by her sold and assigned to me.  I remark all this here, because I think my executors should be advised of the facts, in view of the possibility that the mother of said Kate and other of her relatives, may 'grumble' and be disposed to 'make difficulty' if they could, because no more of Dr. Case's or Mrs. Emily W. Case's money or property—which they eagerly coveted for themselves and the said Kate, fell into her hands.  My executors will find bill of sale of furniture, assignments of bonds, (such particularly as were lodged with, and bought of) Gilbert & Gay—these written by my mother's hand in a little 'bank book' in which a list of the bonds was then (in 1886) written) and various deeds of land among my papers in my bank boxes; and the assignment of bank stocks and 'corporations, stocks,' railroad and otherwise, can be found, of course, in the files or books of the various banks and corporations concerned.  My executors will probably also find papers written by my late mother, showing that said Kate had received from her grandfather and grandmother several thousand dollars, so she has no real ground for complaint, especially in view of her treatment of her grandmother.

"13. I direct and bequeath that in case any one of my various legatees in the foregoing twelve items named should die before me, (and if I, by codicil hereto, shall have made no disposition of his or her bequest) then the sum bequeathed to such person decedent, shall be given, share and share alike, to all the other legatees in this instrument named—except the said Kate C. Newton, my intention and will being that she in no case whatever, be paid over or more than ($100) One Hundred Dollars—minus the 5% " collateral inheritance tax," if the State shall be mean enough to demand that :—but this item (13) shall not be construed as having any relation (and it really has none, strictly interpreted) to the sums of $14,000, and the Naugatuck R. R. stocks left to the use of S. Elizabeth Gillette or the moneys $4,000, and $5,000, the

use of which sums is given to my aunt, Urania, and to Mrs. Marie Howland, respectively,—I refer therefore in this to the possible death of any other of my above named legatees.

" 14. On the death of my cousin, S. Elizabeth Gillette, or of my aunt, Urania, or of the said Mrs. Marie Howland, the sums given to their use will, of course, revert to my estate (and I make the following disposition of them, together with whatever else in the shape of a 'fund' may belong to my estate—to wit—*first*, I direct that as soon as any one of the above named Elizabeth Gillette's or Urania Whiting Wilder's or Marie Howland's death shall be duly made known to my executors or administrators, then One Thousand Dollars ($1,000) clear in money, over and above any rascally State tax, or 'collateral inheritance tax,' which may be demanded of my estate, shall be paid to Ellen Hayes, or Nellie Hayes as she is more commonly called, who has lived with me and my late mother for twelve years past—which sum of $1,000 I hereby give and bequeath to the said Ellen Hayes—(to whom I am indebted at this present writing, in the sum of $800 evidenced by my note for that amount, which note falls due the last day of 1891, but which I now expect to pay long before then). Secondly, I further direct that whenever the said sums of $14,000 and $8,400 ('bonds' and Naug. R. R. stocks or 'shares ') given to my cousin, Elizabeth Gillette's use, and the $4,000 assigned to my Aunt Urania's use, and the $5,000 assigned to Mrs. Howland's use, shall revert to my estate—then (after the payment of One Thousand Dollars to Ellen Hayes as aforesaid) one-half of each and all of said sums, shall be given to that " Society for the Prevention of Cruelty to Animals," which has its office in the City of New York, and of which the late Henry Bergh was a chief promoter, and head—or ' President,' (if I have not correctly quoted its name, the above is, I think, its sufficiently distinct designation—' Bergh's Society ')—to which society or corporate body I give and bequeath said one-half.—

" The other half, I direct to be divided into as many parts or small sums as is—that is shall be found on inquiry to be— the number of individuals among my above named legatees

then living, to whom I have in this will bequeathed the sum of only One Thousand Dollars (the $3,000 and $2,000 ones not to be considered, and my neice, Mrs. Newton, also excepted) *plus* Elizabeth Gillette if she shall be living when Mrs. Wilder and Mrs. Howland or either of them die, or dies; and to each of such number living, one of said parts shall be given—my executors or administrators to endeavor to pay the abominable collateral inheritance tax on said sum— the *two* halves out of any fund which may still belong to my estate

"16. As I have already placed certain of my property— (as I have before written) where it will serve me in life, and be in the hands of those I wish to have it when I am gone; I purpose, if I live to do so, to pass over to some of my legatees herein the sums (or portion of the same) herein bequeathed to them—during my life, by sale and due assignment, reserving to myself a life interest in the use of the same—and I shall probably in such case make a codicil hereto, revoking the bequests herein to such said persons, or (said legatees,—or shall take some other course to outwit the infamous collateral inheritance law—especially shall I probably do so in the case of my second cousin, S. Elizabeth Gillette as to the $5,000 and the $300 in item '2' bequeathed to her. And now I beg the pardon of my above named executrix and executor and of any other person properly 'concerned,' for the rambling construction and bad chirography ('cachography') of this instrument, which I have constructed 'on the jump' on the eve of leaving home for a few days and almost without pause, except for supper, on this p. m. of February 16th, 1891."

By other clauses $13,000 was bequeathed to five persons in legacies of $2,000 and $3,000 each; $8,000 was bequeathed to eight persons in legacies of $1,000 each; all the testator's household furniture, clothing, manuscripts, paintings, silverware, books, etc., were bequeathed to S. Elizabeth Gillette.

When the will was made, and at the time of the testator's death, Kate C. Newton was the only person entitled to any portion of his property as heir or distributee, in case he died

intestate. The time limited for presentation of claims expired and all claims presented and allowed were paid. The plaintiffs did not within three months from the testator's death invest the bequests mentioned in the third and fourth clauses of the will in any securities authorized by the fourth clause.

The plaintiffs brought this action to the Superior Court for Litchfield County, claiming a construction of the will. All parties interested were summoned and appeared. Ellen Hayes, mentioned in the 14th clause, was, on her own application, made a co-defendant. S. Elizabeth Gillette died after the action was brought, and the surviving executor amended the complaint by adding: "Par. 12, The said S. Elizabeth Gillette, since the beginning of this complaint, has deceased."

Upon the foregoing facts, the Superior Court was asked to decide the following questions, viz: *First.* Whether said Kate C. Newton has any other interest in said estate than the legacy given her in the 12th section of said will? *Second.* Whether said Kate C. Newton has an interest in said estate as next of kin and heir at law of the testator? *Third.* Whether all the residuum of said estate is disposed of by the testator in said will, and if so, in what manner and to whom? *Fourth.* Whether the 14th clause of said will, or any part thereof is, or is not, void for uncertainty and indefiniteness, and if so, what part? *Fifth.* (The question stated in the complaint became immaterial upon the death of Miss Gillette.) *Sixth.* Whether the executors are appointed trustees of the legatees mentioned in clauses 3 and 4 of said will, or, having placed said sums so bequeathed in charge of some security company, as directed and advised in said will, they would be released from any further liability or responsibility as regards said bequests; and whether the security company, having accepted said sums so bequeathed from the executors, would become trustees under said will; or whether a trustee to take charge of said funds should be appointed by the Court of Probate; or, whether the executors would be justified and released from further liability if they paid said

sums to the persons entitled to the life use thereof, after said persons have given the probate bond required by statute ?

The court was also asked to decide whether Ellen Hayes is included within the class described in clause 14th, as " my above named legatees," and whether, in support of her claim to be so included, she could introduce in evidence a letter to her written by the testator subsequent to the execution of the will.

By consent and at the request of all parties, the questions or law arising upon the record, what advice should be given, and what judgment rendered, were reserved by the Superior Court for the consideration and advice of the Supreme Court of Errors.

*Wellington B. Smith*, for the executors.

*A. T. Roraback*, for Ellen J. Hayes.

*Charles J. Cole* and *Samuel A. Herman*, for Kate C. Newton.

*Horace Russell* and *Jabish Holmes, Jr.*, of New York, filed a brief on behalf of the American Society for Prevention of Cruelty to Animals.

HAMERSLEY, J.　We think the testator has disposed of all the residuum.

Examining the provisions of the will we find in the first thirteen clauses the following : A specific disposition of substantially all the property which he estimates will belong to his estate at his death, to seventeen legatees, three of them taking a life estate only : A devise to his principal legatee, Miss Gillette, of real estate—apparently all he has except such as may be needed to pay legacies and expenses of settlement : An explanation that in part execution of his purpose to evade the payment of any collateral inheritance tax, he had conveyed to others in trust for himself during life certain bonds and landed properties, a disposition which probably would prove final, although some of said bonds or land might revert to him : A further explanation that after a careful estimate he is convinced that his property remaining at his death will

be sufficient to pay all specific legacies and leave a balance to the credit of his estate, without selling the land not specifically devised; but, as such estimate may be mistaken and the whole of his property, personal and real, may prove insufficient to pay in full the specific bequests, he therefore directs that, in such case, all bequests and devises to Miss Gillette be first satisfied in full: A sarcastic pretense that this reminds him of an intended bequest he had overlooked, viz: a bequest to his niece Mrs. Newton, of $100, which bequest (in the event of such insufficiency of assets) he directs shall be paid in full, after the payment of the bequests to Miss Gillette; and in explanation of this bequest and of the insulting manner in which it is made, he fills one or two pages in justifying himself for thus cutting off his sole heir at law, as well as in giving directions and advice to his executors in view of the possibility that Miss Newton's friends may be disposed to " make difficulty : " A provision that in case any one of his legatees should not survive him, the sum bequeathed should be divided between the surviving legatees, except Mrs. Newton, " my intention and will being that she in no case whatever be paid over or more than one hundred dollars."

Having made these specific provisions and explanations, the testator, in clause 14, undertakes to dispose of the remainder of his property which he then had clearly in mind, *i. e.*, the amount of the three legacies given for life only; the bonds or land that possibly might revert to him before his death; the estate real and personal, if any, that might not be needed to pay the specific legacies and expenses of settlement. In execution of that purpose he directs that upon the termination of the first life estate in the legacies given for life, his executors shall pay $1,000, free of any inheritance tax, to Ellen Hayes, and shall give one half of the sum remaining to the Society for the Prevention of Cruelty to Animals, and shall give the other half in equal portions to his legatees then living to whom $1,000 only has been bequeathed; and that upon the termination of each of the other life estates, the amount of each legacy shall be given, one half to the

Society for the Prevention of Cruelty to Animals, and the other half in equal portions to the $1,000 legatees then living; he also directs that " any fund which may still belong to my estate " shall be used to pay the collateral inheritance tax on all the amounts above mentioned, and then proceeds to dispose of " whatever else in the shape of a 'fund' may belong to my estate." The testator then, in clause 15, bequeaths to his favorite legatee Miss Gillette, his furniture and all his personal belongings, even to his clothing.

The claim is made, and supported by argument ingenious and plausible, that the word " fund " as used by the testator is indefinite, and not broad enough to cover the whole residue of his estate; and also that the language used in describing the disposition of the " fund," whatever that may mean, inadvertently confines any actual disposition of property to the sums given to legatees for life.

We are satisfied from the will itself that it was the intention of the testator to cut off his only heir and next of kin with a bequest of one hundred dollars, to dispose by will of his whole estate, and to divide any residue there might be, in the manner specified in clause 14; and that, whatever difficulties may be suggested, it certainly cannot be maintained that clause 14 is clearly insusceptible of a construction which carries out that intention.

The rules of construction in such case are well settled: the clear intent of the testator as expressed in the will should prevail; an obvious general intent to be gathered from the whole will is rarely defeated by an inaccuracy or inconsistency in the expression of a particular intent; every intendment is to be made against holding a man to be intestate who sits down to dispose of the residue of his property. *Alsop* v. *Russell*, 38 Conn., 101 ; *Goodrich* v. *Lambert*, 10 id., 452 ; *Warner* v. *Willard*, 54 id., 472. Applying these rules to this very peculiar will, and reading it in the light of the testator's mannerisms so patent on its face, and in connection with his general purpose expressed with a clearness and certainty that excludes any possibility of misunderstanding, we cannot doubt that when the testator, in clause 14, wrote

"I make the following disposition of (the sums bequeathed to legatees for life and of) whatever else in the shape of a 'fund' may belong to my estate," he intended to and did dispose of all the residuum.

Ellen Hayes is plainly included among the "above named legatees to whom I have in this will bequeathed the sum of only one thousand dollars." The force of the language which unqualifiedly includes her among those legatees, cannot be weakened by the doubt suggested as to whether she is also included for a different purpose, under the provisions of clause 13, among "the other legatees in this instrument named."

The letter offered in evidence is plainly inadmissible.

We think the executors are made trustees of the bequests for life to Mrs. Wilder and Mrs. Howland, and that they may properly and safely commit the trust funds to the care and management of a security company such as is described in clause two.

The Superior Court is advised to render judgment answering the questions submitted, as follows:—

*First:* The residuum of the estate is given, one half to the Society for the Prevention of Cruelty to Animals; and one half in equal proportions to the persons named in the will as legatees of the precise sum of $1,000, who were living at the death of Miss Gillette; payable on the final settlement of the estate after the death of all life tenants.

*Second:* The sums given to Miss S. Elizabeth Gillette for life became, upon her death, payable by the executors as follows: One thousand dollars, free of any collateral inheritance tax, to Ellen Hayes, and one half of the remainder to the Society for the Prevention of Cruelty to Animals, and the other half to the $1,000 legatees living at the death of said Gillette; these payments to be made free of any collateral tax.

*Third:* The sum given to Mrs. Urania W. Wilder for life, is payable on her death as follows: One half to the Society for the Prevention of Cruelty to Animals, and the other half to the $1,000 legatees living at her death; and the sum given

to Mrs. Marie Howland for life, is payable on her death as follows: One half to the Society for the Prevention of Cruelty to Animals, and the other half to the $1,000 legatees living at her death. All these payments to be made free of any collateral inheritance tax.

*Fourth:* Ellen Hayes is included among the $1,000 legatees, and is entitled to the portion of such legatee upon the division of the life legacies and of the residuum.

*Fifth:* The executors are made trustees of the $4,000 bequeathed by clause three to Mrs. Urania W. Wilder for life, and of the $5,000 bequeathed by clause four to Mrs. Marie Howland for life; they are authorized to commit these funds to the care and management of a security company such as is described in clause two, and exercising due care in the selection of such security company, and in continuing it as agent, will not be held responsible for the defaults of such company in regard to said funds.

In this opinion the other judges concurred.