MARTHA K. HOOPS ET AL., TRUSTEES (WILL OF WILLIAM F. HOOPS) *v.* ADELAIDE M. STEPHAN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 5—decided July 6, 1944.

*James W. Cooper* and *Crenna Sellers,* for the defendants Martha K. Hoops et al.

*George E. Beers* and *William L. Beers,* for the defendants Adelaide M. Stephan et al.

*L. Horatio Biglow,* for the plaintiffs.

BROWN, J.   In this action for the construction of the last will and codicil of William Frederick Hoops, these material facts are stipulated: The testator died June 16, 1941, leaving his widow, Martha K. Hoops, who is sixty-eight years old, and as his only heirs-at-law two daughters, Adelaide M. Stephan and Marion H. Hull, and two sons, Ernest W. Hoops and Edwin F. Hoops, children of his first wife who died, and one daughter, Ethel, child of his widow.   Martha married the testator when the children by his first wife were quite young and cared for them in the home until they grew up.   All of the five children are now

between forty and fifty years of age. July 14, 1941, Edwin was declared incompetent and Ethel was appointed his conservator.

By his will, executed January 20, 1941, the testator, after providing for the payment of his debts and for three relatively minor gifts, including one of "two parcels of sweet meadow" to his wife Martha, by paragraph five left her the life use of a twenty-five-acre tract of land and his summer residence thereon together with the furniture, with remainder to his three daughters or the survivor or survivors of them in equal shares. By paragraph six he devised the residue of his property to the plaintiffs in trust: first, to "apply the net income and the principal . . . to pay the taxes, charges and repairs" on the summer residence and real estate during Martha's life use; second, to divide the balance of the net income into two equal parts and to apply one part so far as in their discretion they should deem necessary for Edwin's proper support, the surplus during his lifetime or all of it should he predecease her to be paid over to Martha during her life, and should she predecease him the surplus during his lifetime to be paid over to the testator's surviving daughter or daughters in equal shares; third, to pay over the other part to Martha for life and upon her decease leaving Edwin surviving to apply the amount in their discretion necessary for his proper support, any surplus to be paid over to the testator's then surviving daughter or daughters in equal shares; and fourth, upon the death of the survivor of Martha and Edwin the trust to terminate and the principal and any undistributed income to be paid to the testator's then surviving daughter or daughters in equal shares. By paragraph nine he gave to the trustees absolute discretion in the exercise of certain powers in dealing with the trust

estate and in the investment of its funds which are stated in a series of subparagraphs designated (a) to (n).

By his codicil, executed June 5, 1941, the testator provided: "I hereby revoke Paragraph Sixth of said will as I wish to make sure, as far as possible, that the income from my residuary estate will be sufficient to provide for the comfortable support and maintenance of my wife, Martha K. Hoops, and my son, Edwin F. Hoops during their lives, and I substitute for said paragraph the following:" The codicil then provides by a substituted paragraph sixth that in the event Martha and Edwin survive the testator, first, the trustees shall not only pay the taxes, charges and repairs on the real estate of the summer residence as the will had specified but also those on the "furniture and equipment" and in addition the "mortgage interest, if any, . . . during the lifetime of my said wife, or until the property is disposed of." It then goes on to reiterate in substance the further provisions of paragraph six. The one further material provision of the codicil is the addition to paragraph nine of a subsection (o): "If, in the discretion of my said Trustees, the income provided for in Paragraph Sixth of my said will shall be insufficient to provide for the comfortable support and maintenance of my said son Edwin and my said wife, Martha K. Hoops, I authorize and direct my said Trustees to sell and convey the whole or any portion of my estate and to pay to my said son and wife such sum or sums from the proceeds thereof as shall from time to time, in the discretion of my said Trustees, be necessary to secure to my said son and wife such comfortable support and maintenance. This power shall vest in any successor of the Trustees hereinbefore named."

The plaintiffs have qualified as trustees under the

will and the present value of the trust estate is $103,326.57. The estimated net income available each year for the support and maintenance of Edwin and Martha is from $1800 to $2300 less than the sum required for that purpose. At the time of the testator's death, Martha owned or was entitled to a house and land in Madison, of the assessed value of $3100, which the testator had given her November 12, 1935; the two parcels of sweet meadow devised to her by the will, of the aggregate assessed value of $1050; a joint survivorship savings bank account of $1539.89 standing in her name and that of the testator; another savings bank account of $2084.82 of her own funds in her own name; and the proceeds of a $10,000 insurance policy on the testator's life which was taken out by him and of which she was beneficiary. At the present time she still owns the two parcels of sweet meadow. On September 14, 1942, she conveyed the Madison property to Ethel as a gift. The $3000 balance of the savings bank accounts is in a joint survivorship account standing in the names of Martha and Ethel. The proceeds of the life insurance policy have been invested in United States bonds, to the amount of $5,975 in the names of Martha "or" Ethel and to the amount of $4000 in the name of Ethel. Edwin's only separate property is a $4855.50 balance of the proceeds of a $5000 policy of insurance on the testator's life which the testator took out and in which he named Edwin beneficiary. Adelaide, Ernest, Marion and Ethel each received $3752.06 on the death of the testator, proceeds of insurance policies upon his life which he had taken out and in which he had named them beneficiaries. Ethel is unmarried and makes her home with her mother in the house in Madison which the latter deeded to her.

The defendants Adelaide, Ernest and Marion con-

test the trustees' right to invade trust principal for the support and maintenance of the life beneficiaries, the burden of their contention being that it cannot be resorted to until the beneficiaries' own and separate income and principal have been exhausted. The fundamental question determinative of those submitted for the advice of this court is, what effect does the fact that the life beneficiary has individual resources in the nature of income or property have upon the right and duty of the trustees to invade the trust principal pursuant to subsection (o) of the codicil? The answer to this question depends upon the ascertained intent of the testator, and this intention "may be gathered not only from within the instrument itself, but also from the circumstances which surrounded the testator when the will was made, including the condition of his estate, his relations to his family and beneficiaries, and their situation and condition. The construing court will put itself as far as possible in the position of the testator, in the effort to construe the uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention." *Fritsche* v. *Fritsche*, 75 Conn. 285, 287, 53 Atl. 585; *New Britain Trust Co.* v. *Stoddard*, 120 Conn. 123, 126, 179 Atl. 642. Furthermore, in ascertaining the intent which is expressed in a certain provision, the court reads the will as a whole and if it discloses an underlying intent gives due consideration thereto in determining the meaning to be accorded to an ambiguous provision. *Bronson* v. *Pinney*, 130 Conn. 262, 269, 33 Atl. (2d) 322; *Pinney* v. *Newton*, 66 Conn. 141, 152, 33 Atl. 591; *Mitchell* v. *Reeves*, 123 Conn. 549, 556, 196 Atl. 785.

The provisions of this will and codicil, in the light of the circumstances existing at the time of their execution, make clear that the testator's dominant purpose

was to insure comfortable support and maintenance for his wife Martha and for his incompetent son Edwin so long as they should live. By the original will, aside from the summer residence, the life use of which with maintenance at the estate's expense was devised to Martha, the income of substantially the whole of the testator's property was devoted first of all to support for her during her remaining years and for Edwin for life. The provisions of the codicil indicate that, as a result of further reflection during the four and a half months which intervened prior to its execution, some doubt had arisen in the testator's mind whether his bequest of income to Martha and Edwin would prove adequate to assure them the comfortable support and maintenance which he desired and intended they should have. This is evidenced not only by his substitution in the codicil of the provision devoting principal as well as income to the accomplishment of this result but also by his express statement of purpose, in referring thereto in the codicil, that "I wish to make sure, as far as possible, that the income from my residuary estate will be sufficient to provide" for their "comfortable support and maintenance . . . during their lives." As is manifest from the context, the testator here used income to mean all money to be paid from the trust fund to Martha and Edwin, whether realized from income in the technical sense or principal.

While it is true that the provision in subsection (o) authorizing the trustees, if in their discretion the income should be insufficient for the comfortable support of Martha and Edwin, to sell of the principal to provide therefor, and the further provision that the trustees may pay to these beneficiaries so much of the proceeds as shall from time to time in their discretion be necessary to secure their comfortable support, considered by themselves appear somewhat contradictory, an

application of the principles already recited is sufficient to resolve this apparent conflict. Even if, standing by itself, the provision for the payment to Martha and Edwin of so much of the principal as might be "necessary to secure" their "comfortable support and maintenance" might suggest a narrower meaning, the preamble to the codicil and the power to sell, coming first as they do, no doubt speak the predominant thought of the testator. The provision covering the payment of income to them is no more than an authorization and direction to the trustees concerning the manner in which the money realized from the sale of the trust property is to be paid over. Subsections (b) and (c) of paragraph six of the original will, which were supplanted by subsections 2 and 3 respectively of Part A of the substituted sixth paragraph under the codicil, defined the trustees' powers and duties as to the net income to be paid to the life beneficiaries. No such provision had been made, however, applicable to the proceeds realized from trust property sold. The words in question supplied that deficiency and were necessary to insure an even flow of needed income to the beneficiaries from the combined proceeds of trust net income and trust property sold, and to avoid the payment to them of sums varying in amount and probably in excess of their needs at such times as assets were converted into cash. Under the circumstances, the words in question do not show an intent by the testator that invasion of trust principal shall be contingent upon the prior exhaustion of the beneficiaries' separate property. Rather, they merely evidence an intent that the money be paid over to them in such amounts and at such times as in the trustees' discretion their comfortable support and maintenance may require.

The question of the right of the life beneficiary of a

trust providing for resort to principal to supplement income for support and maintenance, when support is available to that beneficiary from independent sources, has been passed upon in many cases. As we have already pointed out, the determinative question is always as to the intent expressed by the testator in the provision under consideration. While diverse conclusions have been reached, the conflict in the cases is more apparent than real because of the varying language and circumstances involved. Thus it is that the cases decided by this court which the defendant remaindermen claim as authority for holding that here the separate property of the beneficiary must be exhausted before the principal of the trust can be invaded are distinguishable. In the first case, *Hull* v. *Culver*, 34 Conn. 403, the will gave the property to the beneficiary to use for life and "if he should want for his support to sell any part or the whole of it for his maintenance, my will is that it shall be at his disposal." Pointing out that the question was whether the power of sale conferred was absolute or contingent and that this depended upon the meaning of the word "want" as used in the will, this court held that the language quoted clearly implied a limitation or restriction of the power to a case of necessity. In *Peckham* v. *Lego*, 57 Conn. 553, 19 Atl. 392, the question was whether the will gave an estate for life or in fee by this provision: "Should it be necessary for their personal comfort to use any portion of said property, it is my will that they do so, exercising good judgment. . . ." It was held (p. 555) that the testatrix by the use of these words "never intended to sweep away the life estate" which she had given, but only to supplement it by a right to resort to principal in case of an emergency "founded on necessity and restricted by necessity." In each of the cases of *Hull* v. *Holloway*, 58 Conn. 210,

20 Atl. 445, and *Bridgeport-City Trust Co.* v. *Beach,* 119 Conn. 131, 174 Atl. 308, the language of the will created a spendthrift trust, giving expression to the dominant intent on the testator's part, implicit in every such trust, that the beneficiary's resources be restricted to those essential for his support, thus avoiding any excess which might be either squandered by him or reached by his attaching creditors. In the most recent case of *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 15 Atl. (2d) 305, the will provided: "So much of both of the income and principal of such trust fund as is necessary in the discretion of . . . [the trustees] to provide for the comfortable support of my daughter, Mary B. Donovan during the term of her natural life shall be expended or paid over by said trustees for said purpose. . . ." The income very substantially exceeded the amount required for Mary's "comfortable support." We held (p. 220) that it is "indicated by the context of the will" that in determining the amount of net income to be expended for her support her other financial resources must be taken into account. In all five of these cases the language of the will, in the light of the circumstances, expressed the intent of the testator that invasion of principal be conditioned on necessity, as distinguished from absolute provision for resort to it regardless of the life tenant's resources. For the differentiating reasons already discussed, the opposite is true of the testator's intent in the instant case.

"The primary question in this class of cases always is, does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in

case of need, the private income of the beneficiary must be considered in determining whether such need exists." *Matter of Martin,* 269 N.Y. 305, 312, 199 N.E. 491. As is further explained in another New York case, *Matter of Gatehouse,* 149 Misc. 648, 657, 267 N.Y.S. 808, a gift of support and maintenance calls for the payment of an ascertainable sum, the exact amount of which will depend upon certain extraneous circumstances, including the manner of living of the donee and the cost of such varied elements as food, lodging and clothing; and it is said (p. 658): ". . . when an absolute gift is made of the sum which is compounded from the elements going into the computation of 'support and maintenance,' it assumes the nature of any other absolute gift and is not subject to defeat by any extraneous condition. . . . the fact that the intended recipient may be able to supply his needs in this regard from other sources is wholly immaterial in any evaluation of his rights to the testamentary gift of the sum which would ordinarily be required for this purpose." In the following cases involving testamentary provisions authorizing resort to principal to supplement income for support and maintenance, the court, applying the principles we have discussed, held that the life beneficiary's individual resources were immaterial in any evaluation of his rights under the trust. *Rezzemini* v. *Brooks,* 236 N.Y. 184, 140 N.E. 237; *Matter of Clark,* 280 N.Y. 155, 19 N.E. (2d) 1001; *Holden* v. *Strong,* 116 N.Y. 471, 22 N.E. 960; *Matter of Gatehouse,* supra; *In re Jaeck's Will,* 42 N.Y.S. (2d) 514, 522; *In re Estate of Worman,* 231 Iowa 1351, 1353, 4 N.W. (2d) 373. The annotation in 101 A.L.R. 1461, 1465, and cases cited, and 3 Page, Wills (3d Ed.), p. 470, afford further authority to the same effect. See also, Restatement, 1 Trusts, § 128, comment e: "It is a question of interpretation whether

the beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled." And see 1 Scott, Trusts, p. 672.

It is our conclusion that the gift of maintenance and support in the present case is an absolute gift, the cost to be charged against income and if income is insufficient against principal. The right to support and maintenance came into existence from the beginning of the gift and is not contingent upon any necessities. It is comparable to a gift of a sum of money, the amount to be ascertained from the elements which make up support and maintenance.

To questions A and B, which only are material under our decision, we answer "yes."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.