F. Prescott Griswold *v.* The First National Bank
of Wallingford, Trustee (Will of Frederick
P. Griswold) et al.

Maltbie, C. J., Brown, Jennings, Dickenson and Inglis, Js.

Argued January 7—decided February 26, 1948.

*F. Prescott Griswold,* pro se, the appellant (plaintiff).

*Philip B. Billings,* with whom was *Robert P. Billings,* for the appellee (named defendant); and, on the brief, *Robert M. Dowling,* for the appellee (defendant Harold H. Griswold).

BROWN, J.   Upon this appeal from the judgment of the Superior Court sustaining a decree of the Probate Court for the district of Meriden, the primary question for determination is whether the $77,254.82 balance of the estate of the testator should, under the provisions of his will and codicil, be divided into two equal trust funds for the benefit of the plaintiff and the defendant Harold H. Griswold, respectively, as provided in the decree, or whether it should be divided into a trust fund of $50,000 for the former and one of $27,254.82 for the latter, as contended by the plaintiff.

The testator, Dr. Frederick P. Griswold, died in Meriden on June 26, 1932, leaving his widow, Caroline Griswold, and two sons, the plaintiff, F. Prescott Griswold, and the defendant Harold H. Griswold, hereinafter referred to as the defendant.   The testator left a will dated August 3, 1926, with a codicil dated January 23, 1931.   These were duly probated, administration thereunder was completed, and the residue was placed in trust in accordance with article third of the will as amended by article second of the codicil.   The defendant bank is the sole trustee and executor.   Under the terms of the trust the net income was paid to the widow up to the time

of her death on December 24, 1945. Thereupon the trustee filed its account with the Probate Court showing a total balance on hand of $77,254.82, consisting exclusively of personal property.

Subparagraph 3 of article second of the codicil provides that upon the death of the widow the trust shall continue in the defendant bank "as sole trustee . . . for the uses and purposes as specified in Articles Fourth and Fifth of my said Will, and . . . [it] is empowered and hereby directed to execute and perform all the duties of said trusts . . . ." Article fourth of the will provides that upon the death of the widow, or upon the testator's death if he survives her, $50,000 shall be held in trust by the trustee "to pay over the net income . . . to my son, Frederic Prescott Griswold, during the term of his natural life." Further provisions follow for the payment of the net income after the death of the plaintiff Frederic to his widow until her death or remarriage; then for the payment of the principal, discharged of any trust, to the plaintiff's issue then living, to be equally divided per stirpes, but, in the event of no such issue then living, for the payment of the net income "to my son, Harold Hull Griswold, if he shall then be living, during his life," and, after these provisions have been satisfied, then the principal, discharged of any trust, to the issue of the defendant Harold then living, equally per stirpes; and, in the event that no issue of either of the sons is alive at the time provided for the vesting of the fund in such issue, for the payment of the fund to the donees named in and under the provisions of the fifteenth and sixteenth articles of the will. Article fifth makes provision for another $50,000 trust identical in its terms with that in article fourth except that Harold's name is sub-

stituted throughout for Frederic's and Frederic's name for Harold's.

Since the total amount remaining in the estate was insufficient to establish two trusts of $50,000 each, the Probate Court by its decree ruled that one-half of the $77,254.82 balance should be placed in each trust fund. Thereby it overruled the plaintiff's claim that the $77,254.82 should not be equally divided but that $50,000 thereof should first be placed in the trust for him, and only the then remaining balance in the trust for his brother, the defendant. From the decree of the Probate Court the plaintiff took this appeal to the Superior Court.

The plaintiff relies primarily upon article fourteenth of the will in support of his claim. This provides: "I hereby direct in the event that my estate, or the trust fund created in and by Article Third of this will, shall be insufficient to pay in full all of the pecuniary legacies heretofore given, that the pecuniary legacies bequeathed to or for the benefit of my wife and my sons shall be given precedence over any and all of the other legacies and shall not abate pro rata." Articles sixth, seventh, eighth, ninth and tenth of the will provide for legacies to others than the testator's wife and sons, and these abated, because of the insufficiency of the estate, by reason of article fourteenth. The plaintiff contends that the words "shall not abate pro rata" mean that he is entitled to receive the $50,000 trust fund prescribed for him without abatement, but that the $50,000 trust for the defendant is subject to abatement in so far as is necessary to insure payment of the plaintiff's trust in full, so that the remaining $27,254.82 only can be devoted to the trust for the defendant. The court, on the contrary, construed the use of these words by the testator as establishing a distinc-

tion between the gifts to his wife and sons, on the one hand, and those to the remaining legatees, on the other, so that, in the event the gifts to the latter could not be satisfied in full, then any balance, after those to the wife and sons had been paid, would be pro rated among the remaining legatees. Whether the prohibition against the abatement of legacies is applicable in favor of the plaintiff as against the defendant, entitling the former to the full $50,000 fund, or only applies in favor of the two sons and their mother as against the other legatees, with the result that the $77,254.82 must be equally divided between the two sons, depends upon the correct interpretation of this provision of the will.

The pole star of testamentary interpretation is the intent of the testator. *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 272, 161 A. 341. In interpreting a will to ascertain what that intent is, "we are confined to the intent which finds expression in the wording of the will. *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 Atl. 785." *Meriden Trust & Safe Deposit Co.* v. *Spencer,* 127 Conn. 261, 264, 16 A. 2d 349; *Rogers* v. *English,* 130 Conn. 332, 338, 33 A. 2d 540. By the language in article fourteenth the testator very clearly states that he is dealing with two classes of pecuniary legacies, those to his wife and sons and those to other legatees. Concerning the former he twice specifies a preference. In the event of insufficient estate to pay all of the pecuniary legacies in full, the will provides that the legacies to the wife and sons "shall be given precedence over any and all of the other legacies," and, again, that they "shall not abate pro rata." The only reasonable construction of these provisions is that they express the testator's intent that, in the event the contingency stated should arise, the estate shall be

applied first to the payment of the legacies to his widow and two sons, and that these shall not be abated pro rata along with the other pecuniary legacies, as would otherwise be the case. Even if, as the plaintiff suggests, the first provision quoted, without more, might have safeguarded the legacies of the sons and their mother against the abatement to which the other pecuniary legacies would be subject, that the testator saw fit to make doubly sure by expressly providing therefor by the second provision quoted affords no sufficient reason for adopting a different construction and gives rise to no ambiguity.

Even were the language of article fourteenth considered by itself insufficient to afford the answer, still the defendant's contention that there is an ambiguity and that under a proper construction the $77,254.82 should not be equally divided could not be substantiated. This is so by reason of the other provisions in the will. In ascertaining the intent which is expressed in a certain provision, "the court reads the will as a whole and if it discloses an underlying intent gives due consideration thereto in determining the meaning to be accorded to an ambiguous provision. *Bronson* v. *Pinney*, 130 Conn. 262, 269, 33 Atl. (2d) 322; *Pinney* v. *Newton*, 66 Conn. 141, 152, 33 Atl. 591; *Mitchell* v. *Reeves*, 123 Conn. 549, 556, 196 Atl. 785." *Hoops* v. *Stephan*, 131 Conn. 138, 143, 38 A. (2d) 588. The will and codicil as a whole make clear the testator's intent to maintain complete equality between his two sons in establishing a $50,000 trust for each. They are in long detailed form and indicate deliberate consideration and the assistance of skilled and experienced scriveners, and they provide for a complete disposition of the testator's estate. They are clear, ac-

curate and precise in their provisions. As already pointed out, articles fourth and fifth of the will, establishing the two $50,000 trusts, are identical in language, except for the different name, in each, of the son who is beneficiary. Article third of the codicil reiterates this idea of equality of distribution by giving to each son a power of appointment as to the $50,000 trust fund given him by the will. That the testator gave no expression or indication, either in creating the trusts by the will executed in 1926 or in bestowing the powers of appointment by the codicil in 1931, of a desire for any such preference for the plaintiff as he now claims is strong evidence of the intent of the testator that complete equality should prevail as to the two trusts. That intent is emphasized by the explicit provisions which he made in articles twelfth and thirteenth of the will. By the former he made an absolute gift to the plaintiff and by the latter a gift of a corresponding amount, but in trust, to the defendant. It is thus manifest that where he intended a difference in distribution between the two sons he did not fail to give clear expression to such intent. Article eleventh of the will, giving the homestead to the plaintiff and defendant "share and share alike," is further indication of the testator's general over-all plan of giving to each son an equal share.

To sum up, the language which the testator has used leaves no room for doubt as to his intent that the balance of $77,254.82 in the trustee's hands should be divided equally between the trust for the plaintiff and that for the defendant, and any other disposition of it would be contrary to his intent as so expressed. The plaintiff, however, claimed to be entitled to introduce oral evidence as to the circumstances of the testator when he made the will and

codicil, to aid the court in correctly construing them. The plaintiff stated in his offer of the evidence that it was based upon a claimed ambiguity in the will, and the ruling of the court was that he must first show wherein there was such an ambiguity. He did not thereafter offer any evidence of a latent ambiguity, and the provisions of the will so clearly show the intent of the testator that any extrinsic evidence offered would tend to establish an intent which would either add to the will something for which its terms afford no reasonable basis or contradict the intent plainly shown by them. The court did not err in overruling the plaintiff's claim. *Jackson* v. *Alsop,* 67 Conn. 249, 252, 34 A. 1106; *Bryan* v. *Bigelow,* 77 Conn. 604, 614, 60 A. 266; *Mahoney* v. *Mahoney,* 98 Conn. 525, 537, 120 A. 342; 4 Page, Wills (Lifetime Ed.) § 1617.

The only other rulings on evidence requiring mention relate to claimed advancements by the testator to the defendant. Two questions were asked of and claimed on behalf of the plaintiff which the court excluded. One was: "Have you any knowledge of any other advancements your father made to your brother?" The other was: "At the time of the execution of your father's will in 1926, did your father make any statements or declarations to you with reference to the sums that he had advanced to your brother Harold?" The questions were properly excluded. If offered to prove "the intention of the testator, as disclosed by said will and codicil in the light of his family situation and the surrounding circumstances" when they were executed, as alleged in the sixth reason of appeal, the questions were inadmissible for the reasons stated in the preceding paragraph. If offered to prove a claim of advancements made by the testator to the defendant, to re-

duce the amount of any bequest to the latter, they were inadmissible for several reasons. It suffices to mention two. This issue was not within those stated in the plaintiff's reasons of appeal. *Livingston's Appeal,* 63 Conn. 68, 75, 26 A. 470; *Vivian's Appeal,* 74 Conn. 257, 261, 50 A. 797; *St. Leger's Appeal,* 34 Conn. 434, 448. Such a claim would be inconsistent with the plaintiff's sole fundamental contention that insufficiency of the estate was the only reason why the defendant was not entitled to receive his $50,000 trust in full.

In his brief the plaintiff asserts that all parties join in a request, if a new trial is ordered, that an allowance be made to each son of one-half of the income of $50,000, "as such a sum is not in litigation herewith." Such allowance can be made only by the judgment of the Superior Court. *Horton* v. *Upham,* 72 Conn. 29, 32, 43 A. 492. The plaintiff also asks that this court enter a decree for the distribution of the income accumulated for the past two years from the fund now in the trustee's hands. This court could consider such a matter only on an appeal from a judgment of the Superior Court.

There is no error.

In this opinion the other judges concurred.