## Richmond

VIRGINIA W. SMITH, ET AL. v. LUTHER D. GILLIKIN, SURVIVING EXECUTOR, ETC., ET AL.

June 22, 1959.

Record No. 4971.

Present, All the Justices.

The opinion states the case.

*Toy D. Savage, Jr.* (*Daniel H. Payne; Willcox, Cooke, Savage & Lawrence; Wolcott, Wolcott & Payne,* on brief), for the appellants.

*George E. Haw* (*Haw & Haw*, on brief), for appellee, Julia Bidgood Whitehurst.

*James E. Heath*, for appellees, Elizabeth C. Myers and Elizabeth J. Campbell.

BUCHANAN, J., delivered the opinion of the court.

This suit was brought by Luther D. Gillikin, surviving executor of the will of Kate C. Wrenn, deceased, and committee of McDonald Lindsay Wrenn, Jr., also deceased, to have the court construe the will "and the annuity policies issued by Equitable Life Assurance Society" which had been purchased by Mrs. Wrenn some years before her death. The issue presented by the pleadings and decided by the trial court was whether the monthly payments under the annuity policies after the death of Mrs. Wrenn had been properly applied to the support and maintenance of McDonald Lindsay Wrenn, Jr., or whether his support and maintenance should have been provided exclusively from the trust fund set up in the will.

From the bill, answers, exhibits and stipulated facts the following case appears:

McDonald Lindsay Wrenn, Jr., was the only surviving child of Mrs. Wrenn, the testatrix. From his birth he was a helpless incompetent and during all of his life was dependent on others not only for his maintenance and support, but also for the care and protection of his person. To this son the testatrix gave her unremitting love and care for more than forty years and until her death in 1938. He died in 1956, eighteen years later, intestate, unmarried, and without issue. During her lifetime she employed a nurse, Ester Sjoblom, for his care, comfort and protection, who served during the life of the testatrix and after the death of the latter until her own death on June 16, 1951.

In 1933 and 1934 in order to insure the support and maintenance of her son, the testatrix purchased from the Equitable Life Assurance Society three annuity contracts at the aggregate price of $110,000, providing for an annuity of $506.60 per month payable to Mrs. Wrenn for the remainder of her life and after her death to her son for the remainder of his life. If at the death of the survivor of the mother and son these monthly payments did not amount to $110,000, the difference was to be paid to the estate of Mrs. Wrenn.

At her death in March, 1938, Mrs. Wrenn left a will dated Feb-

ruary 8, 1938, in which she devised to her executors, Luther D. Gilli-kin and William H. Campbell, all of her property of every kind in trust during the life of her son, with directions to control and manage it, collect the income, pay all expenses in connection there-with, and then

"to expend the net income therefrom or so much thereof as may be necessary or proper during the life time of my said son, McDonald Lindsay Wrenn, for the support and comfort of my said son in the situation in life which he has occupied during my life time so that my said son shall enjoy the necessities and comforts of life and all reasonable luxuries and conveniences. In the event the net income from my estate shall not be sufficient for the support and comfort of my said son as aforesaid I authorize my said executors to expend any or all of the corpus of my estate for the support and comfort of my said son."

She directed that Ester Sjoblom should personally supervise the welfare of her son and disburse on his behalf "such money as may be paid to her for that purpose by my executors from time to time," for which the executors should pay her $100 a month.

The will then provided that on the death of her son certain sums were to be paid to a niece-in-law, sister-in-law, and niece, and $25,000 to Ester Sjoblom if still so employed at the death of the son; and after the payment of these legacies all the rest and residue of her property she devised and bequeathed one-third each to Ester Sjoblom (if in the employ of her son or her estate at the death of the son), Mrs. Whitehurst, niece-in-law, and Mrs. Myers, niece.

After the death of Mrs. Wrenn the executors of her will filed a petition in the Corporation Court of the City of Norfolk stating that under the will they were charged with certain duties to McDonald Lindsay Wrenn, to whom certain monies were payable from insur-ance companies, and asking the court to appoint a committee for him and direct such committee to use and expend such money as might come into their hands for said incompetent. Pursuant thereto the court entered an order on June 6, 1938, appointing said Gillikin and Campbell as committees and therein directed that they "from the installments of insurance to be paid to them periodically by insurance companies, expend such monies for the support and maintenance of said McDonald Lindsay Wrenn as may be reasonable for his proper support and maintenance."

Accordingly, from June 6, 1938, to the death of McDonald Lind-say Wrenn, Jr., on July 1, 1956, the committees used for the support

and maintenance of their ward all of the monthly annuity payments which with those paid to his mother exceeded the $110,000 purchase price paid therefor by her. The annuity payments so expended by the committees were not considered sufficient for the support and maintenance of the incompetent and they were supplemented in considerable amounts from time to time by the executors from the income of the trust estate established by the will. However, there was an unexpended balance of income from the trust estate of approximately $32,000 which was accumulated and added to the corpus which has a present value of about $275,000.

During this period of eighteen years the executors of the will and the committees of the incompetent, and the surviving executor and surviving committee, regularly made their fiduciary settlements showing the details of their transactions, which were approved by the commissioner of accounts and confirmed by the court. In that period no question appears to have been raised from any quarter as to the propriety of their acts until some of the heirs-at-law, collateral kindred of McDonald Lindsay Wrenn, Jr., set up their claim in this litigation that in this period the support and maintenance of the incompetent should have come entirely from the trust fund established by the will, leaving the monthly annuity payments to accumulate as the personal estate of the incompetent to be distributed to his heirs-at-law on his death.

On consideration of the matters above stated the trial court found and decreed that in purchasing the annuities it was the intention of Mrs. Wrenn to insure the support of her incompetent son; that her purpose and the force and effect of her will were to supplement the annuity payments so far as necessary to support and maintain her son and to furnish him the luxuries and conveniences to which he had been accustomed, and to that end the will vested in her executors complete discretion; that the executors in determining the amount of income necessary or proper to be expended from the trust fund were entitled to require the committees first to expend for that purpose the monthly payments from the annuities; that the action of the committees in so doing was right and proper, and that neither the surviving committee nor the estate of the incompetent was entitled to any reimbursement from the trust estate on that account. The surviving executor was directed to pay the specific bequests made by the will and to pay over and deliver the residue of the trust estate to the surviving beneficiaries in accordance with the terms of the will.

The appellants say that the single question presented by their

assignments of error to this decree is whether the language of the will quoted above which created the testamentary trust limited the expenditures from the trust fund to such sums as necessary to furnish such support and comfort as could not be afforded the beneficiary from his personal estate, or whether the beneficiary was entitled to receive his support and maintenance from the trust estate without regard to his personal income and resources. We think the question is somewhat broader than that.

The direction in the testamentary trust is that the trustees shall expend the net income from the estate "or so much thereof as may be necessary or proper" during the lifetime of the son for his support and comfort in the situation in life which he had occupied during the life of his mother, "so that my said son shall enjoy the necessities and comforts of life and all reasonable luxuries and conveniences." If the net income was not sufficient for these purposes, the trustees were authorized to expend any or all of the corpus for the support and comfort of the son.

Similar language in other wills has under the circumstances of the particular case been held to require that the support and maintenance of the beneficiary of the trust be provided from the trust estate without regard to the fact that the beneficiary owned property or had income sufficient in whole or in part to provide his own support.[*]

Generally it is a question of interpretation whether the beneficiary is entitled to support out of the trust fund when he has other means. "* * * Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance or support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources. * * *." 1 Scott on Trusts § 128.4 at 672.

"By the terms of the trust it may be provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of a beneficiary. In such a case the beneficiary cannot compel the trustee to pay to him or to apply for his benefit more than the trustee in the exercise of a sound discretion deems necessary for his education or support.

"It is a question of interpretation whether the beneficiary is

---

[*]*Hoops* v. *Stephan*, 131 Conn. 138, 38 A. 2d 588; *Ingalls* v. *Ingalls*, 256 Ala. 321, 54 So. 2d 296; *President, etc.* v. *Delaware Trust Co.*, 33 Del. Ch. 430, 95 A. 2d 45; *Holden* v. *Strong*, 116 N. Y. 471, 22 N. E. 960; *Rezzemini* v. *Brooks*, 236 N. Y. 184, 140 N. E. 237; *In Re Gatehouse's Will*, 149 Misc. 648, 267 N.Y.S. 808 (See criticism of this case in 47 Harv. Law Rev. p. 1073. See also Note, 18 Va. Law Rev. 684).

entitled to support out of the trust fund even though he has other resources. * * *." Restatement of the Law of Trusts § 128 e., pp. 326-7.

We look for the intention of the maker of the will in the will itself, "viewed in the light of environment, relationship, duty and other allowable circumstances and conditions surrounding the testator, which might almost be termed the imponderables of the situation," things which may reasonably be supposed to have influenced the testator in the disposition of his property. 20 Mich. Jur., Wills, § 93 at 274. *Pitman* v. *Rutledge*, 198 Va. 567, 95 S. E. 2d 153; *Hoops* v. *Stephan, note supra,* 131 Conn. 138, 38 A. 2d 588. The last-named case holds that under the circumstances the words of the will did not show an intent on the part of the testator that the invasion of the trust principal should be contingent upon the prior exhaustion of the beneficiaries' separate property. The opinion then distinguished five other Connecticut cases which had reached a different conclusion on the ground that "the language of the will, in the light of the circumstances, expressed the intent of the testator that invasion of principal be conditioned on necessity, as distinguished from absolute provision for resort to it regardless of the life tenant's resources." 131 Conn. at 147, 38 A. 2d at 591.

In the later case of *City of Bridgeport* v. *Reilly*, 133 Conn. 31, 33-39, 47 A. 2d 865, 866-8, the will directed that the trustee "may in her discretion expend or appropriate any or all of the income or principal * * * for the comfortable support" of Coughlin. Coughlin was then insane and being cared for in a state hospital at the expense of the city, which sought to compel the trustee to reimburse it for its expenditures. The court said it was impossible to escape the conclusion that the testator "was thinking of the use of the fund to supplement the care and support which the state was furnishing Coughlin while he was an inmate of the hospital," which "differentiates this case from those where the intent of the testator in establishing a trust was primarily to afford general support for the beneficiary. * * * The situation falls within the principle that a trustee, in determining whether to make expenditures under a discretionary trust for support, is entitled to take into consideration other means of support available to the beneficiary. * * *."

*In Re Gatehouse's Will*, (1933), cited in the note, *supra*, reviews previous New York cases holding that an absolute gift for support and maintenance cannot be defeated by extraneous conditions, such as private resources of the beneficiary, and also reviews five other

New York cases in which the private resources of the beneficiary were required to be taken into consideration in determining the sum he was entitled to receive from the trust. The opinion observes that particular precedents are substantially valueless in testamentary interpretation, agreeing in that respect with the statement in *Collins* v. *Hartford Accident etc. Co.*, 178 Va. 501, 512, 17 S. E. 2d 413, 417.

When Mrs. Wrenn executed her will in 1938 she of course knew that four years before she had taken $110,000 from her estate and purchased monthly annuities payable to her as long as she lived and after her death to her son. She did this, it is agreed, in realization of the condition of her son and to insure his support and maintenance. She doubtless supplemented these annuities before her death from her other funds because the executors' fiduciary settlements show that in all except five of the eighteen years after her death the executors supplemented these annuities by paying substantial sums to the committees from the trust estate. In 1938, the year of Mrs. Wrenn's death, total payments by the executors to the committees were approximately $23,000, including some $15,000 for the purchase and furnishing of a residence. She must have known from experience that the $506.60 a month from the annuities would not be enough for the support and comfort, the luxuries and conveniences that she had provided for her son while she lived. When she executed her will she had already provided these annuities to be used for his support and maintenance as long as he lived. It would be wholly unrealistic to conclude that when she by her will directed her executors to expend from the property she devised to them "so much thereof as may be necessary or proper" for the support, comfort and all reasonable luxuries and conveniences of her son, she did not have reference to so much as was necessary or proper in view of the monthly annuities she had already provided for that very purpose.

It is important, in fact controlling, in this case to recognize the origin and character of the so-called personal property of the incompetent. What the appellants refer to as his "independent personal property" consisted entirely of these annuities that were provided by his mother for his support and maintenance after her death. She bought them for the definite purpose that they be used for his support and maintenance. She meant to create no estate in this helpless son. He had no use for property except as it could be used for him by others. These annuities were committed by her to this particular use and none other. It was so recognized by the executors, by the committees, and by the court, as evidenced by the proceedings

noted above which were taken shortly after the death of Mrs. Wrenn, in which the committees were directed to apply these annuity payments to the support and maintenance of the ward in accordance with their intended purpose. To hold now that these annuity payments should have been preserved intact through these years and accumulated to make an estate for the incompetent to be distributed on his death to his collateral heirs, who were never recognized by Mrs. Wrenn either in contracting for the annuities or in creating the trust in her will, would result in giving to these collateral heirs of the son property which very clearly the testatrix did not intend them to have. So to hold now would, in our opinion, defeat the intention of Mrs. Wrenn with respect to these annuities and be contrary to the purpose and intent of the testamentary trust created by her will.

We agree with the trial court that the monthly annuity payments were properly applied to the support and maintenance of the incompetent and that neither the surviving committee nor the estate of McDonald Lindsay Wrenn, Jr., is entitled to receive from the trust estate established by the will any reimbursement for the annuity payments so applied.

The decree appealed from is

*Affirmed.*