CHARLES C. COCKRELL, FRANCIS MARION COCKRELL, THOMAS MARION COCKRELL and ELLA ETTA COCKRELL-ZIERDT v. THE FIRST NATIONAL BANK OF KANSAS CITY, a Corporation, NANNIE S. HOUSE and JOHN J. COCKRELL, Trustees Under the Will of THOMAS L. COCKRELL, Deceased, JOHN J. COCKRELL and M. W. BORDERS, JR., Executors of the Estate of THOMAS L. COCKRELL, Deceased, Appellants, ELLA M. COCKRELL, JOHN J. COCKRELL and HELEN LOUISE HAMPTON, Defendants.—No. 40485.—211 S. W. (2d) 475.

Division Two, April 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, May 27, 1948.

*John B. Gage, John F. Reinhardt* and *F. Philip Kirwan* for defendants-appellants The First National Bank of Kansas City, Nannie S. House and John J. Cockrell, Trustees Under the Will of Thomas L. Cockrell, Deceased, John J. Cockrell and M. W. Borders, Jr., Executors of the Estate of Thomas L. Cockrell, Deceased; *Gage, Hillix, Shrader & Phelps* and *Margolin & Reinhardt* of counsel.

*Philip J. Close* and *Phineas Rosenberg* for respondents.

[476] WESTHUES, C.—This is a suit wherein plaintiffs ask for a judicial construction of the last will and testament of Thomas L. Cockrell, deceased. Plaintiffs are beneficiaries under the will and defendants are the executors and trustees named in the will and a number of them are also beneficiaries. The trial court entered a decree from which the executors and trustees, but not the beneficiaries, appealed.

First we will describe the parties plaintiffs and defendants. The plaintiffs are Charles C. Cockrell and Francis Marion Cockrell, half-brothers of the testator, and Thomas Marion Cockrell and Ella Etta Cockrell Zierdt, nephew and niece of the testator and children of plaintiff, Francis Marion Cockrell. The defendants named are The First National Bank of Kansas City, Nannie S. House and John J. Cockrell, trustees under the will. John J. Cockrell, also a half-brother of the testator, and M. W. Borders, Jr. were named defendants as they are the executors under the will. Ella M. Cockrell, widow of the testator; John J. Cockrell and Helen Louise Hampton, adopted daughter of John J. Cockrell were named as defendants, the first two being beneficiaries and the last named a contingent beneficiary under the will. The testator and his wife had no children.

The estate, as inventoried, was valued at over $600,000. Among the assets was a paper box factory owned individually by the testator. The trustees were given full power to continue the operation of this factory in the same manner as the testator had been doing. Testator's brothers held key positions in this business, receiving salaries, but they had no financial interest therein. By the will the testator, aside from a few special bequests, devised and bequeathed title to all of his property to the trustees. In addition to giving them full power to operate the box factory he imposed upon them other duties which we will discuss later.

By Article XI, paragraph (a) of the will the testator provided that, "So long as my said wife, ELLA M. COCKRELL, shall live and shall not remarry, my said Trustees shall pay and distribute to her out of the net income of and from the Trust Estate, the sum of Six Hundred Dollars ($600.00) per month; provided that, if, at any time during the period while such payments are being made to my said wife, ELLA M. COCKRELL, as herein directed, by reason of illness, accident or other misfortune, or if any emergency should arise, or if for any reason whatsoever in the uncontrolled and absolute discretion of my said Trustees further funds should be necessary for the comfortable maintenance and support of my said wife, then my said Trustees are authorized and directed to pay to her, either out of the net income or principal of the Trust Estate and in addition to

the provision hereinbefore made for my said wife, such sum or sums as my said Trustees in their absolute and sole opinion shall deem proper, . . ."

Testator also provided that his wife should, so long as she should live and not remarry, have the free use of the residence property; the taxes, repairs, etc., to be paid by the trustees. Paragraph (a) concludes as follows:

"Prior to the death or remarriage of my said wife, ELLA M. COCKRELL, any income [477] from the Trust Estate not distributed to my said wife shall be treated as income, and not as principal, by my said Trustees."

By a codicil the provision of $600 per month was reduced to $500. Also, by the same codicil $150,000 was set aside to be invested in government bonds to be held by the trustees for the sole purpose of insuring the payments to be made to the widow. It was in evidence that at the time of the trial the trustees were paying the widow $20,000 per year in place of the $500 per month. The evidence also disclosed that from March, 1945 to March, 1946, the estate had a net income of approximately $160,000. All parties are agreed that the trustees were empowered by the will to provide for the widow and to increase the monthly payments whenever in their judgment such action was deemed necessary. The question giving rise to this lawsuit is, what are the trustees to do with the surplus net income remaining after payments to the widow have been made?

Plaintiffs contend that it should be distributed among certain persons designated in the will; while the trustees contend that such net income should be retained until the remarriage or death of the widow and then distributed to such named persons. The principal provisions of the will relied on read as follows:

"(b) Upon the death or remarriage of my said wife, ELLA M. COCKRELL, I authorize and direct my said Trustees to pay and distribute the net income from the Trust Estate then accrued or accumulated and then undistributed to the following named persons in the proportions set opposite their respective names, and thereafter I authorize and direct my said Trustees to pay the net income from the Trust Estate not less frequently than quarter-annually to the following named persons in the proportions set opposite their respective names, to-wit:

| "JOHN J. COCKRELL | 30% |
| GEORGE F. COCKRELL | 20% |
| CHARLES C. COCKRELL | 20% |
| THOMAS MARION COCKRELL | 7½% |
| ELLA ETTA COCKRELL | 7½% |
| FRANCIS MARION COCKRELL | 15% |

In case of the death of GEORGE F. COCKRELL, whether or not he leaves surviving issue, or in case of the death of any of the other

foregoing named persons prior to the death of myself or prior to the death or remarriage of my said wife, ELLA M. COCKRELL, or prior to the termination of the Trust herein created without leaving issue, the share or shares of such person or persons in and to the Trust Estate shall be divided among the then survivors of the six (6) persons hereinabove named, and the issue of any of the six (6) persons hereinabove named, who may have theretofore died, with the exception of . . .''

Following this the will provides certain exceptions and also provides:

''In case of the death of any of the six (6) persons above named, with the exception of GEORGE F. COCKRELL, prior to my death or prior to the death or remarriage of my said wife, ELLA M. COCKRELL, or prior to the termination of the Trust herein created, leaving issue, as herein defined, I authorize and direct my said Trustees to make payments and distributions to such surviving issue, share and share alike, per stirpes and not per capita, of the share of the deceased parent of such surviving issue, . . .''

One of the six named in the will as beneficiaries, that is, George F. Cockrell, died after the execution of the will but before the testator's death. Another paragraph in the will, which may have a bearing on the issues presented, reads as follows: 

''(1) The 'net income' derived from the Trust Estate, or from any part of the Trust Estate, shall be the income left after deducting all charges, disbursements and expenditures authorized hereunder or by law, in connection with the administration of the Trust Estate, or share or portion of the same, provided the Trustees shall have, in their discretion, charged these items to income instead of principal, as hereinabove set out. This is a trust primarily for maintenance, and I direct that the payments from net income derived from the Trust Estate be paid to the beneficiary or beneficiaries beginning from the date of my death.''

Plaintiffs relied strongly on the latter portion of this paragraph.

This case was well briefed by appellants and respondents, both, as to the [478] law and to the facts. Many cases from this and other states were cited and reviewed. However, there is not much dispute as to the law applicable in the construction of wills. Appellants urge that the trial court in construing the will in question violated and disregarded fundamental canons of law relating to the construction and interpretation of wills. They contend that the will in question must be construed according to the intent expressed therein and should be so construed as to give effect to all the words without rejecting or controlling any of them, and that a court is without power to reform an unambiguous will or to impute to a testator an intent not expressed in his will. Cases were cited to support these statements of the law. We need not discuss these cases. Suffice to say that those rules are well established. There is also a well established

rule of law that if provisions of a will are inconsistent, or their meaning dubious, a court is authorized to admit evidence showing circumstances surrounding the testator at the time the will was written for the sole purpose of ascertaining the intention of the testator. 69 C. J. 136, Sec. 1174; also page 139, Sec. 1175; Kerens v. St. Louis Union Trust Co., 223 S. W. 645, 283 Mo. 601, 11 A. L. R. 288; Heard v. O'Dell et al., 335 Mo. 202, 72 S. W. (2d) 491, 1. c. 494 (1); Gannett v. Shepley, 351 Mo. 286, 172 S. W. (2d) 857, 1. c. 858 (1-4). In this case, resort to that rule may not be necessary. We will analyze the will and codicil and endeavor to give due consideration to all of the provisions; and where inconsistency appears, attempt to harmonize the provisions if possible so as to ascertain the intention of the testator.

It may be safely stated that the paramount intention of the testator, as evidenced by the provisions of his will, was to provide ample funds for the comfort and support of his wife. By his will he authorized the trustees to pay all taxes and necessary repairs on her home and to maintain it for her free of rent; also, to pay her $600 per month, this to be increased if they deemed it necessary. The will further authorized these payments to be made from the income of the estate and if that were not sufficient to apply the principal. The testator, as evidenced by a codicil, gave further consideration to this matter. In the codicil, prepared and signed in March, 1940, six months after the will was dated, the monthly payments were reduced to $500, however, the testator, by the codicil, ordered $150,000 to be set aside for the purpose of insuring the maintenance of the widow. We conclude from the above provisions of the will and the codicil that the testator was satisfied that he had made ample provisions for his wife and had set aside a fund sufficient for that purpose.

Appellants rely upon paragraph (b) of Article XI and urge that the language used therein can only mean that the trustees shall hold all net income, except that used for the support of the widow, until her death or remarriage and then distribute the same to the named beneficiaries. It is argued that the use of the word "accumulated" can only mean that the net income is to be retained. It is also argued that the testator provided that thereafter, meaning after the widow's death or remarriage, the trustees should distribute the income to the persons designated. It is said that there would be no accrued or accumulated income if all such income were distributed from the date of the death of the testator. It would be idle to say that appellants' argument is without some merit, however, if the will were construed as appellants urge it should be it would result in eliminating or disregarding other plain provisions of the will. Paragraph (q) of Article XI reads as follows:

"Inasmuch as I have made ample provision for my brother, JOHN J. COCKERLL, it is my desire that he shall receive no compensation for his services as Trustee hereunder."

It will be noticed that John J. Cockrell was given thirty per cent of the net income. That is the only provision made for him by the testator with the exception of being made an executor. This trustee was the only one designated to serve without compensation as such trustee, the testator giving as a reason therefor that he had made ample provision for him. The testator evidently deemed thirty per cent of the net income to be sufficient compensation for [479] his services. If the trustees are to withhold all of the net income, except that used for the widow until her remarriage or death, John J. Cockrell may never receive a dime for his services and also may not receive any sum as a beneficiary under the will. Certainly that was not the intention of the testator as evidenced by the above clause in the will.

Another provision of the will which would be rendered useless if the income were retained as appellants contend, is the provision that if any one of the six named beneficiaries should die prior to the death or remarriage of the widow then the trustees should make payments and distribution to the survivors of the six. There is another alternative in the will that if certain numbers of the six die leaving issue, prior to the death of the widow or her remarriage, then the trustees are ". . . to make payments and distributions to such surviving issue, share and share alike, per stirpes and not per capita, of the share of the deceased parent of such surviving issue, . . ." How can the trustees obey the provisions just referred to and distribute or pay the income to the survivors, prior to the death or remarriage of the widow, if they are to hold the net income until such death or remarriage of the widow? The question answers itself.

Then we find the declaration of the testator contained in clause (1) to the effect that the trust created by the testator is primarily for maintenance, and that the payments to be made to the beneficiary or beneficiaries are to begin from the date of his death.

What then had the testator in mind when in paragraph (b), Article XI, he directed that after the death of his wife or her remarriage the trustees pay the net income then accrued, or accumulated, and then undistributed to the persons named and to thereafter pay such income not less frequently than quarter annually? What the testator said in paragraph (c) of Article XI may shed some light upon this question, that is, upon the meaning of what was said in paragraph (b). 69 C. J. 109, Sec. 1154. By paragraph (c), as modified by codicil, the trust is to cease five years after the death of the survivor of the testator, his wife and John J. Cockrell. The testator directed that at that time the trustees ". . . shall pay over and distribute to the persons then receiving net income from the Trust Estate the entire remaining principal of the Trust Estate, *together with any accrued but undistributed net income thereon,* . . ." (Italics Ours.) In view of the language used we must consider that we have

an estate that earned a net income of $160,000 in one year. The testator evidently recognized that at the time of the happening of any event mentioned in the will there would be on hand accrued undistributed net income that would have accumulated since the last distribution. The testator may have been and in all probability was speaking of such net income when he made reference thereto in paragraphs (b) and (c). For example these paragraphs provide that on the death or remarriage of the widow all net income then on hand should be distributed to the persons designated and thereafter distribution should be made at least quarterly. So also at the termination of the trust, which may occur at a time when the trustees have in their possession quite a sum of undistributed net income. If the will be so construed all clauses thereof will be given effect, none modified, destroyed or disregarded. We do not deem this to be a strained construction. We are of the opinion that it is in harmony with the plan and scheme of the testator as evidenced by his will and codicil. We are supported in such interpretation by well established principals of laws. As stated in appellants' brief:

"A will should be construed to give effect to all the words therein without rejecting or controlling any of them, provided this can be done by a reasonable construction not inconsistent with the manifest intent of the testator."

See 69 C. J. 104, Sec. 1153. We have followed this rule in this case.

It is also well settled that the law favors vested estates, that is, the present enjoyment thereof unless expressly directed to be otherwise. See Estey v. Commerce Trust Co., 333 Mo. 977, 64 S. W. (2d) 608, l. c. 613 (1) (2), where this court said:

[480] "It is not necessary to discuss the reasons given for this rule in various cases, such as that it will be presumed that the testator intended to favor the immediate objects of his bounty rather than those more remote, or that, where the object is to provide support and maintenance to favored persons, it will be presumed that the testator intended such benefit to commence as soon as possible."

See also 69 C. J. 102, l. c. 103, Sec. 1151, paragraph "First taker"; 69 C. J. 784, Sec. 1887.

By express provision of the will John J. Cockrell has only a life interest in the property of deceased. The trust, by the terms of the will, is not to end and the corpus of the estate is not to be distributed until five years after his death, provided he survives the widow and the testator. If the will be construed as appellants contend, this legatee may never receive any benefit from the estate. What then becomes of the testator's intention as evidenced by clause (q) wherein it was stated that ample provision had been made for his brother and that he should act as trustee without compensation?

We are of the opinion that the trial court properly interpreted the will, and its judgment and decree are in all respects affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.