**Corrine Anne Staigg NEAGLE, Appellant,**

v.

**Theodore HITT, Rita Hitt, Pleasant Hill Legion and War Dads Building Corporation, and City of Pleasant Hill, Missouri, Respondents.**

**No. 52225.**

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1968.

Motion for Rehearing or to Transfer to Court en Banc Denied March 11, 1968.

Crouch, Crouch, Spangler & Douglas, L. M. Crouch, Jr., and James E. Thompson, Jr., Harrisonville for Theodore Hitt and Rita Hitt.

Felix V. Gross, Pleasant Hill, for Pleasant Hill Legion and War Dads Building Corp. and City of Pleasant Hill, Mo.

Linde, Thomson, VanDyke, Firchild & Langworthy, Charles W. Hess and Charles White Hess, Kansas City, for appellant.

J. P. MORGAN, Special Judge.

Plaintiff failed to prevail in her action to quiet title to certain lots in Pleasant Hill, Missouri, which were originally owned by her great-grandfather, John T. Russell, and she bases her present appeal on the assertion the trial court erred in construing his "will and codicil" which all parties agree was determinative of the title action.

In 1885 when John T. Russell executed his Last Will and Testament his immediate

family consisted of his wife and two daughters. For purposes of brevity we will respectfully refer to him as the "testator"; to his daughter, Rosa, who prior to the execution of the will had intermarried with one Ingels and was then Rosa Ingels, as "Rosa"; to the testator's daughter, Minnie, who during the period between the execution of the will and codicil had married one Brown, as "Minnie"; to the testator's wife, Fannie Russell, as "Fannie"; to the original will of March 19, 1885, as the "will"; and, to the codicil thereto of June 9, 1903, as "codicil." Fannie died prior to 1903 and the testator died in the year 1904, leaving as his sole and only heirs his two daughters, Rosa and Minnie. It is agreed Minnie had one child, Frances Staigg, who predeceased Minnie and left as her one and only child, Corrine Anne Staigg Neagle, plaintiff in this action. Upon the death of Minnie on February 9, 1963, plaintiff soon thereafter initiated separate actions to quiet title to different properties which, by stipulation, have been consolidated in this appeal.

Defendants all claim to have derived their interests in the property through various conveyances from Minnie, and they rest such claims on the contention that Minnie by the codicil had been devised a fee simple interest in the lands of interest here. Plaintiff asserts that by the will and codicil Minnie had been devised a life estate only and that she, as the sole and only heir of Minnie, had a vested remainder with a possessory right thereto since the death of Minnie in 1963. Thus, as agreed by the parties and is evident from the facts outlined, the one question is: Did Minnie have a fee simple title or a life estate only in the lands pertinent to this appeal?

To fairly present and consider the theory of construction advanced by plaintiff, several paragraphs of the original will must be set out. We have italicized those portions she contends substantiate her argument. The paragraph numbers are consistent with the original will, but unnumbered sub-paragraphs will be given a numerical designation for purposes of clarity and reference.

"First. I give, devise and bequeath to my daughter, Rosa Ingels the following described real estate: (Here followed a description of 473⅜⁄100 acres of land.) to have and to hold the same to my daughter, Rosa Ingels, during her life, for her own use and behoof and after her death to the heirs of her body, and to their heirs and assigns forever.

"Second. I give, devise and bequeath to my daughter Minnie the following described real estate: (Here followed a description of 417⁵⁴⁄100 acres of land.) To have and to hold to my daughter Minnie during her life, the same for her own use and behoof, and after her death to the heirs of her body and to their heirs and assigns forever.

Third.—1: "If either of my daughters, my beloved wife, Fannie Russell, excepting those portions devised and bequeathed to my daughters, Rosa and Minnie all my real estate wheresoever situated, which I may own at the time of my death, including not only my lands in the country, but also my lots and houses in Pleasant Hill, Missouri. She shall have the privilege of using the lands in any way she may deem best for her own use and benefit and to sell all or any portion of them at such prices and on such terms as may be approved by my brother, Harvey Russell.

"Third.—1: "If either of my daughters, Rosa or Minnie should die without issue or living offspring, before my wife's decease, the real estate which I have in this will bequeathed to her (my daughter) during her life, and after her death to the heirs of her body, shall go to her surviving sister, whichsoever one that may be, to have and to hold the same to her during her life, for her own use and behoof, and after her death to the heirs of her body, and to their heirs and assigns forever.

\* \* \* \* \* \*

Third.—2. "There will be no necessity for the appraisement of my property after my death, as I desire my wife to control and use all the property both real and personal, herein bequeathed by me to her as she may deem best for her own use and benefit, during her life, and after her death, if my two daughters, Rosa Ingels and Minnie should survive her, I desire that the property left by my wife shall be divided equally between them."

Some eighteen years later the testator felt required to add a codicil to this will because of the death of his wife, Fannie.

C–1: "Whereas since making my Last Will and Testament dated the 19th day of March, 1885, my beloved wife, Fannie Russell has died it becomes necessary that I make a division between my daughters of the property I bequeathed to her and other properties which have come into my possession since the date of the will. *It is my wish that the bequests to my daughters as set forth in the Will should stand as written.*

C–2: "To make further distribution of my property I accordingly bequeath to my daughter Rosa Ingels and her heirs all of my tract of land lying west of Pleasant Hill, Missouri, and known as the Thomas Hayes Farm. *I also bequeath to my daughter Rosa and which I do not entail, the following.* The house and grounds attached thereto where she nows lives, also the house in which a man by the name of Gibson now lives being lots 1–2–6 & 7 in Van Noys Second Addition to Pleasant Hill, Missouri. Also the house and grounds attached, being lots 6 & 7, Block 48 in Millers Addition to Pleasant Hill, Missouri. The house now being occupied by Mr. Lawson. Also lots 13–14 & 15 in Block One (1) in Van Noys Second Addition to Pleasant Hill. Also the brick store building formerly used for Post Office and now used for a bowling alley and being the south half (½) of Lot 4 in Block F of Pacific R.R. addition to Pleasant Hill. Also a tract of land known as the Shaw property containing twenty-two acres more or less and situated between the old and new towns of Pleasant Hill. Also to my daughter Rosa I give $1,000.00 to equalize the division I make of my Pleasant Hill real estate.

C–3: *"To my daughter Minnie Brown and her heirs* I bequeath the N.E. ¼ of the S.W. ¼ of Section One (1) in Township Forty-Six (46) of Range Thirty-One (31) in Cass County, State of Missouri and containing 40 acres more or less. Also the following lands lying and being in Jackson County, Missouri, to-wit: All of the East half of the Southwest quarter, and the Southeast Quarter of the Northwest Quarter of Section Thirty-One (31) in Township Forty-Seven (47), of Range Thirty (30), containing one-hundred twenty (120) acres more or less. *Also to my daughter Minnie I give and bequeath the Hostzles Store building being on Lot 1 and part of Lot 2 in Block 75 in Millers Addition to Pleasant Hill, Missouri. Also the little building, being the south half of Lot 5 in Block F, Pacific Railroad addition to Pleasant Hill, Missouri."*

Further provisions bequeathed some personal property *jointly* to Rosa and Minnie with a further provision that bank stock be divided equally between them. Two later paragraphs provided:

C–4: "And lastly *to my daughter Minnie I give and bequeath* the home place where I now live and have lived for many years with all the Lots adjoining and improvements thereon.

C–5: "In case there is any property I possess that has been omitted or forgotten it *shall be equally divided* between my 2 daughters."

 The lands in dispute are described as indicated by the italicized descriptive portion of paragraph C–3 of the codicil. As shown they were devised to Minnie by

the following language: "To my daughter Minnie Brown and her heirs * * * also to my daughter Minnie I give and bequeath. * * *" Unquestionably, this devise created a fee simple absolute title in Minnie, and it would have been difficult to have suggested to the testator a more certain method of so doing. Section 474.480, V.A.M.S. Further, " * * * it is to be assumed that the testator knew and understood the meaning and legal effect of the words used." Shaw v. Wertz, Mo., 369 S.W.2d 215, 218.

■ In the face of the concise and unambiguous language used to make this devise, and being fully aware of our holding in Hereford v. Unknown Heirs et al., 365 Mo. 1048, 292 S.W.2d 289, wherein it was stated at page 293, "If, from such an examination, the intent is ascertainable, auxiliary rules of construction are not to be resorted to * * *" we will attempt to follow the plaintiff's theory that the testator did not mean what he said. Her basic premise, with which we agree, is "All technical rules of construction are subservient to the paramount rule that the intention of the testator shall control unless it violates some established rule of law." Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289, 294. She correctly asserts that paragraphs First and Second devise large tracts of real property to each of the daughters for life with a remainder interest in their heirs; that paragraph Third–2 apparently devised the residue of the realty to Fannie for life only despite her right to sell and dispose of the same during her life, Gent v. Thomas, 363 Mo. 528, 252 S.W.2d 345, and that Fannie was to divide that portion not sold by her between the two daughters; that paragraph Third–1 provided that if either daughter predeceased the mother without issue, her share was to go to the surviving daughter.

We are then encouraged by plaintiff to find the following five inferences which we will consider individually: (1) The placement of paragraph Third–1, providing for the possibility one daughter might pre-decease the mother without issue, after the devise to the wife, was significant, and the use of the words " * * * the real estate which I have in this will bequeathed to her (my daughter)" applied not only to paragraphs First and Second but also to that part subject to the mother's estate in paragraph Third. To the contrary, the terminology used can more logically be found to be a reference to paragraphs First and Second that set out the daughters' estates for no reference at all was made to the lands either daughter *might receive* "equally between them" at the time of the death of the mother, Fannie. (2) The plaintiff having drawn the rather strained deduction set out in (1), then quotes from paragraph C–1 of the codicil, "It is my wish that the bequests to my daughters as set forth in the will should stand as written." For this language to create any inference favorable to plaintiff's position, her argument set out in (1) would have to be more convincing and acceptable. (3) In plaintiff's next argument she quotes "* * * and which I do not entail * * *" from paragraph C–2 and asserts, "Obviously testator thought the other property in the Codicil division to Rosa also had 'fee tail' characteristics, otherwise he would not have found it necessary to use the language, 'and which I do not entail.' Since this property was originally devised and bequeathed in Section Three of the 1885 will as residual property, the 'fee tail characteristics' could only attach because of their disposition via the will itself." However, there are several reasons we cannot accept such an over-all deduction from the words used reference the lands here involved. First, the terminology used in C–2 pertains to the devise to Rosa and not Minnie; second, if the testator did not "entail" the property following the use of such language, it should be noted the part so devised included mostly town property and a small acreage in comparison to the large tracts certainly "entailed" by paragraphs First and Second, and following the same construction as plaintiff, it is significant that the devise to Minnie in C–3 included the

town properties with which we are now concerned. If Rosa's town properties were not "entailed," it is more logical that those of Minnie were not to be. (4) Testator's use of the word "division" rather than "distribution" in C–1 of the codicil does not appear to have the implications suggested by plaintiff. (5) Plaintiff's affidavits attached to her motion for summary judgment, which generally insinuate that certain legal counsel in preparation of deeds had concurred in her construction of the will and codicil, are of interest but certainly not binding on this court. Additionally, they are entirely foreign to any facts or circumstances surrounding the execution of the will or codicil which might reflect in some way the intent of the testator. Cockrell v. First National Bank of Kansas City, 357 Mo. 894, 211 S.W.2d 475.

We recently held in Farkas v. Calamia, Mo., 373 S.W.2d 1, 3, "The rule for determining the effect of subsequent language which purports to reduce the quantum of a devise or bequest made by previously used language is well stated in Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24, as follows: ' "[T]he devise of a fee in terms, or by words necessarily describing an absolute estate * * * cannot be annulled except by later language in the will, which expressly or by necessary implication, arising from words equally as clear and conclusive as those in granting the fee, cuts down the previous grant of the fee." ' " See also Mo.Dig., Wills, ☜601(1). Quite obviously plaintiff's approach fails to meet the demands of this established rule. Additionally, the correctness of so holding is buttressed by the fact the daughters are found to have the same estate in Paragraph Third property they would have had upon the death of their mother under the will had she survived the testator. Nor can we undertake to explore the testator's mind except through the expressions used in the will itself. Vaughan v. Compton, Mo., 235 S.W.2d 328, 330.

The trial court correctly found plaintiff had no interest in the lands involved, and its judgment is hereby affirmed.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., not sitting.