In re George Dewey COATS TRUST.

Mildred DeArman COATS, Appellant,

v.

W. C. WHITLOW, Trustee, William Richard Coats, the Missouri School for the Deaf, Dorothy June Atwood, Mary Jane Friery, the Fulton Presbyterian Church, and the National Association for the Deaf, Respondents.

No. KCD 29533.

Missouri Court of Appeals,
Western District.

April 2, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 1979.

Application to Transfer Denied
June 19, 1979.

Joe D. Holt, Holt, Krumm, Hamilton & Shryock, Fulton, for appellant.

D. James Mariea, Whitlow, Riley, Mariea & Dunlap, Fulton, for respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

The plaintiff Mildred DeArman Coats, life beneficiary under a testamentary trust

settled by her husband, George Dewey Coats, seeks a declaration to direct the trustee, W. C. Whitlow, to encroach upon the corpus of the trust estate to adequately provide her with a *living* according to the terms of the trust. The trustee asserted, and the trial court adjudged, that the trustee had discretion under the trust terms to refuse to invade the corpus while the beneficiary wife held other assets, liquid and readily available, to satisfy her living needs.

The testament and codicil of George Dewey Coats, as admitted to probate, at Article Second created a trust in favor of the wife, Mildred DeArman Coats:

SECOND: If my wife, Mildred DeArman Coats, shall survive me, I give, devise and bequeath all of the rest, residue and remainder of my estate to W.C. Whitlow, to hold the same with full discretionary powers of management, sale and resale, investment and reinvestment, and to keep the same invested, IN TRUST, however, for the following use and purpose, namely:

1. The *Trustee shall first pay to my wife,* Mildred DeArman Coats, on a monthly basis, *the net income of the trust fund.*

2. In addition to the said income, she shall be entitled to live in my home, if she so desires.

3. *I give my Trustee full authority and power to encroach upon the principal of the Trust Estate in order to provide a living for my wife,* and further, in the event of an emergency due to illness, accident or other misfortune, I give the said Trustee full authority to encroach upon the principal of the Trust Estate for any amount necessary to alleviate such emergency.

4. The Trustee may, in his discretion, use and apply such income and/or principal for the benefit of my wife in lieu of making such payment directly to her. [Emphasis added.]

The testator Coats died in 1965. The trustee Whitlow took up his duty some two years later and has since distributed the annual income of $1200 from the trust estate to wife Coats. She now resides with two sisters in Arkansas and her shared obligations for living expenses, exclusive of house maintenance and repair, amount to $500 each month. The trust income—it is evident—does not meet the cost of the expense of her daily life. The wife Coats, however, has available personal resources of $530 each month which derive from a retirement pension as a teacher, a retirement pension from the employment of her husband, and a social security stipend. In addition, she has on deposit $15,000 which accrues an annual income of some $1,000.

The wife Coats seeks a judicial instruction that the trustee invade the corpus of the trust to provide a *living* for her [in the terms of the trust] for which the income, merely, from the trust estate does not suffice. The trustee resists on the premise that the trust terms do not direct encroachment upon the corpus while the beneficiary has resources otherwise available for her *living*. Thus, the appeal presents an issue of law: whether a trustee may consider other resources available to a life beneficiary under a provision of trust which grants power to encroach upon the principal for the support of the beneficiary.

The salient question such a case presents [*Winkel v. Streicher*, 365 Mo. 1170, 295 S.W.2d 56, 61 (banc 1956)] is:

" 'Does the will constitute an absolute gift of support and maintenance which makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists.' "

That primary determination rests upon the intention the testator meant for the trust provisions—discerned from the intrinsic instrument when the sense of the language is clear, and as aided by surrounding circumstances when the sense is in doubt. *Cockrell v. First National Bank of Kansas City*, 357 Mo. 894, 211 S.W.2d 475, 477[1–4]

(1948); § 474.430, RSMo 1969. The parties do not doubt that Article Second, subparagraph 1, makes an absolute gift to the wife beneficiary of the net income of the trust fund. Nor do they doubt that the wife beneficiary has the absolute benefit of residence in the home of the trustor. They contend over whether, in addition, the testament intends an unconditioned access to the trust estate assets, corpus as well as income, to provide a *living* for the beneficiary—without regard to her private resources, or whether the language of the will intends that the trustee shall have the discretion to encroach upon the corpus for need, and in that exercise, may consider the private income of the beneficiary.

The dispute relates to the terminology of Article Second, subparagraph 3: *I give my Trustee full authority and power to encroach upon the principal of the Trust Estate in order to provide a living for my wife . . .* The trustee contends that these terms are a grant of power and that a grant of power vests discretion in a trustee as to the manner of use. It is a matter of rule that a court will not interfere with an honest exercise of discretion by a trustee of a conferred power [*First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 655[19, 20] (Mo.1963)]—so that if subparagraph 3 intends to allow the trustee the reasonable and honest judgment of need of the beneficiary before incursion into the estate corpus, then his refusal to use the principal to support her living while substantial personal assets remain available to the beneficiary is not for challenge before us.

The plain words of integral subparagraph 3, however, merely confer a power—a right to act—a vestment of authority—to encroach upon the corpus to provide a *living* for the wife. They neither direct the trustee to any action nor confer a discretion. The *authority* or *power*, in terms, to a trustee to do something may be intended as a direction or discretion, according to the context of the testament or trust. Scott on Trusts, § 187 (3d ed. 1967); *Schumacher v. Howard Sav. Inst.*, 128 N.J.Eq. 56, 15 A.2d 107, 110[4] (1940); *In re Carr's Estate*, 176

Misc. 571, 28 N.Y.S.2d 12, 14[1] (1941). Hence, the ambiguity. The doubt whether the trustor meant the support to his wife as an absolute gift of the corpus, as well as the income, or only on condition of need is not resolved by resort to precedent or general rule. The variety of text, circumstance and disposition, from will to will, suggests that the intention of the trustor—as discerned from the language of the instrument aided by the environment of the transaction—alone can wrest the true sense to be given effect. The testament and trust provisions, within the context of execution by the husband Coats, stand on their own, *Winkel v. Streicher, supra,* l.c. 61.

The circumstances which surround the execution of the instrument show: Coats, husband and wife, married late. He was then 62 years of age and she was 60; he, for the third time; she, for the first. He had fathered one son during a prior marriage; she was without child. They were deaf and each taught at a school for the deaf and earned separate retirement pensions from that vocation. She gave evidence that upon her marriage to Coats, she retired from employment although she was then physically well and able to continue to teach for ten more years. She performed the normal domestic duties while he continued to teach and accompanied him on his professional tours. Mrs. Coats received benefits from her retirement during the marriage and placed them into a savings account. Mr. Coats knew of this and knew also that upon his death the benefits due from his pension would be given over to her. The expenses of the household were paid from the earnings of the husband. Four years into the marriage, Mr. Coats became ill and died. Mrs. Coats attended to him personally during the last illness.

Coats executed a will and a codicil. The will created a trust at Article Second for the benefit of his widow during her life with the remainder to certain charities and persons, his son or heirs, among them. There was provision that should the net estate total less than Fifteen Thousand Dollars at the time of his death, then two parts

would be distributed to the widow and one part to the son. The testator Coats was both deaf and dumb so the instructions for the testament were communicated to his attorney by writings. An original will, executed in 1961, designated the wife a residuary beneficiary after the payment of certain bequests to the son, two others, and a church. A year later, Coats in a letter to his attorney expressed dissatisfaction that he may not have provided "for all contingencies" and directed the draft of a new will to include a trust provision that the estate be held "during the life time of my wife, Mildred DeArman Coats, who shall receive the income, and live in my house if she chooses to do so." The instruction has no counterpart in what became Article Second, subparagraph 3 of the will, which empowers the trustee to encroach upon the principal of the trust estate in order to provide a living for the wife.

This evidence allows disparate inferences of the testamentary intention as to the trust provisions. On the one hand, the absence of mention in the letter of instruction by Coats for a new draft of the will of any trustee power to encroach upon the principal of the estate to provide support for the wife, the knowledge of Coats that his wife had separate resources, the number of residuary beneficiaries, all bear to the conclusion that the trustor intended the support to the wife to be limited to the income of the estate except for an emergency "due to illness, accident, or other misfortune" described in Article Second, subparagraph 3.

On the other hand, the provision of subparagraph 3 for encroachment upon the corpus to provide the wife a living, although not the subject of the written directions of Coats to his lawyer-draftsman [and designated trustee], was not unlikely the result of instruction made known by Coats to his lawyer during one of the occasional visits described in the testimony of the lawyer-trustee. Also, the fact that throughout the marriage Coats supplied the cost of living solely from his own income [with knowledge that Mrs. Coats had a steady, separate pension benefit] implies the intention that her full support should continue from his estate after his death without regard to her private resources. *Winkel v. Streicher, supra,* l.c. 62. The trust device, we may infer, Coats considered a reasonable method to avoid the hardship which management of the diverse property entails for a woman both elderly and deaf. The provisions of Article Fourth, that should the estate have a value of less than $15,000 at his death [the actual value of the distribution to the trust was some $21,880] then two parts vested absolutely to the widow, implies that the corpus of the trust be as available for her daily needs as would be the property distributable under the contingency of that Article.

However the relevant circumstances may preponderate in favor of a given inference, the actual language of the testament terms remains the primary evidence of the intention of the testator. *Winkel v. Streicher, supra,* l.c. 59[4, 5]. The trust provision, Article Second, consists of the preamble settlement of trust and four subparagraph expressions of purpose. Subparagraphs 1 and 2, the trustee and beneficiary agree, direct the payment to the wife of the income from the trust fund and her option to occupy the residence. Subparagraph 4 allows the trustee, *in his discretion,* to use and apply the *income and/or principal* for the benefit of the wife instead of payment directly to her. Subparagraph 3 [unlike subparagraphs 1 and 2] neither directs nor [unlike subparagraph 4] confers discretion upon the trustee but merely endows the power to entrench upon the corpus of the estate *in order to provide a living for* Mrs. Coats and, further, in order to *relieve an emergency due to illness, accident, or other misfortune.*

The pleadings, adjudication and issues on appeal all assume [quite validly, we conclude] that Article Second is a trust for the support of the wife-life beneficiary. The litigation adopts the premise that subparagraph 1 grants the income from the trust fund to the beneficiary for her support. The only question of testamentary intention raised by the contentions, simply, is whether Article Second constitutes an absolute

gift of support to the wife, and so casts a charge upon both the income and corpus of the trust, or was a gift of income with incursion into the principal for emergency only—and then after the private resources of the beneficiary are given account. We reiterate the question and principle on which the litigation rests because Article Second conforms to no paradigm of testamentary disposition for support, even as to a declaration of purpose, but abounds in ambiguity. See: *Winkel v. Streicher,* supra, l.c. 61[8]; *Hoops v. Stephan,* 131 Conn. 138, 38 A.2d 588, 590[4] (1944); *Orange First Nat. Bank v. Preiss,* 2 N.J.Super. 486, 64 A.2d 475, 476 (1949); Annotation: Trusts—Support—Other Means, 41 A.L. R.3d 257.

The preamble of Article Second settles the trust but does not declare the purpose. The text of subparagraph 1 directs the payment of the income from the trust fund to the wife without condition that it be used for her support or daily need. It is not until subparagraph 3 that the purpose of the trust as a device for support [*to provide a living*] for Mrs. Coats becomes manifest. Subparagraph 4 which allows the trustee discretion to "apply such income . . . for the benefit of [the] wife in lieu of making such payment directly to her" suggests intention that the gift of the Trust fund income in subparagraph 1 is for support. The two clauses of subparagraph 4, read in juxtaposition, disclose an identical intention that the corpus of the trust be used for the daily needs of the wife. The first clause, we note again, invests the trustee with full power "to encroach upon the principal of the Trust Estate in order to provide a living for [the] wife." The access to the corpus for that purpose is not delimited by other means available to the beneficiary. That the benefaction of support was intended to be complete, both from the income and corpus, without consideration of the other resources of the wife becomes more certain in terms of the second clause of subparagraph 4 which empowers the trustee "further, in the event of an emergency due to illness, accident, or other misfortune [access to the corpus] for any

amount necessary to alleviate such emergency." The word *emergency* in this context is akin to *necessity* [*Lyter v. Vestal,* 355 Mo. 457, 196 S.W.2d 769 (1946)—an unforseen conjunction of circumstances which calls for immediate action—and [l.c. 773]

> call[s] for the trustees' best informed judgment on the question of the necessity, the propriety and the amount of an encroachment upon the corpus of the trust estate [and] would be a situation where the financial resources of the widow including the widow's income from the trust estate were, in the best informed judgment of the trustees in considering an urgent need of the widow, in such a state of insufficiency or unavailability that the encroachment would be immediately necessary for the widow's maintenance, comfort and general welfare.

The power to entrench upon the corpus *to provide a living,* on the other hand, does not relate to an unforeseen condition of need or urgency, but the expenses of daily life. We derive from the words of the trust and the circumstances relevant to that endowment the dominant intention of the settlor that the wife-beneficiary receive her full support from the trust estate, income and corpus, as an absolute benefaction without regard to her private resources. The discretion of the trustee, in that regard, bears only on the amount to be dispensed for that purpose.

It is to be acknowledged that the Coats trust provisions hew to no prototype nor reflect exact precedent. The three authorities the briefs discuss, *Winkel v. Streicher, Hoops v. Stephan* and *Orange First Nat. Bank v. Preiss, supra,* all determined—as do we—that the trust terms were a gift of support to the beneficiary, an absolute charge upon the corpus as well as the income, without regard to other resources of the beneficiary. These determinations rested on a discerned intention of the settlor in the face of language and circumstances both variable and distinctive.

The trust terms in *Winkel* [which relied for rationale of decision on *Hoops v. Stephan*, supra] were:

> The trustee shall pay the net income and any part of the corpus of the estate, as he in his sole discretion deems necessary, to my niece . . . for the support and maintenance of my said niece.

The income and corpus [unlike the Coats provision] were expressly declared for the support of the beneficiary, but the right of access of the beneficiary to the corpus for that purpose—despite private resources otherwise available to her and the provision that the trust estate was payable for the support of the beneficiary at the "sole discretion" of the trustee, was found to be the dominant intention of the settlor.

The private resources of the beneficiary were not relevant to the use of the corpus of a trust endowed for the "comfortable support and maintenance" of the beneficiaries in *Hoops* despite provision that the discretion of the trustees determine antecedent to that invasion that the income was not sufficient for that purpose. The intention of support, once again, dominated the allowance of discretion, and was deemed an absolute gift.

The language in *Orange First National Bank* that the trustees pay the living expenses and cost of other care from the principal of the trust to the extent the income was not sufficient for those purposes was held to surcharge the entire trust estate, corpus as well as income, without consideration of the other property of the beneficiary.

These decisions give effect to the principle declared in Restatement of Trusts, Second § 128(e) and adopted in Scott on Trusts, § 128.4 (3rd ed. 1967):

> By the terms of the trust it may be provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of a beneficiary . . . It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. *The inference is that he is so entitled.* [Emphasis added.]

The inference rests on the premise that a testator usually knows the circumstances of the beneficiary, and should the testator intend other resources or obligations for the support of the beneficiary to be given account to determine the amounts dispensed for that purpose, that intention can be readily expressed. *Winkel v. Streicher, supra,* l.c. 62; *Magruder v. Magruder,* 525 S.W.2d 400, 406 (Mo.App.1975).

■ The terms of the testament, consider within the known circumstances of the wife at the time the testator refashioned the absolute legacy under the earlier will into a trust provision for her life support under the subsequent will without condition that her pension stipend and other personal resources be given account, discloses intention that the wife-beneficiary have her full support from the trust estate. The declaratory judgment of the trial court that subparagraph 3 of Article Second allows the trustee discretion to consider the personal assets of the wife-beneficiary as a condition to encroachment upon the corpus for her support is erroneous.

The issue remains whether the allowance of an attorney fee to the trustee for defense against the claim of the life beneficiary was properly awarded against the trust estate. The wife contends the fee was improvidently granted because: (1) the trustee failed to file an answer; (2) the trustee failed to distinguish between services he rendered to the trust and those rendered to residuary beneficiary Williams Coats; and, (3) the fee was excessive.

The contention that the trustee was careless in the defense of the trust has only technical validity. On the eve of trial, after the petition for declaratory judgment had pended for four years, counsel for the wife life-beneficiary discovered the trustee had no answer on file. The next morning, counsel moved the court to declare the trustee in default and to render judgment on the petition. The trustee had made answer on behalf of residuary beneficiary Coats [joined as a party defendant] and so there was not total default to the petition. The trial

court entered interlocutory judgment of default under Rule 74.045 against the trust estate only, but allowed the trustee to defend as to the amount of the claim against the estate.[1] Whatever the rigor of defense intended by the court against the trust estate, the lawyer-trustee [counsel for the trustee and residuary beneficiary Coats] conducted the examination and proof without stricture as to party defendant. And, indeed, the issue as to each defendant was the same: whether the trust provision intended an absolute gift of support for the wife from the corpus as well as income of the trust estate. The amount to be dispensed [the "damages," within the sense of the trial court order] was not a separate element of proof, but followed as of course from the resolution of the antecedent question of construction.

The lapse of the trustee to file an answer, which prompted the court to declare the interlocutory default—and which, the life beneficiary contends, bars the allowance of attorney fee—was only formal. The litigation pended for four years; during that time the lawyer-trustee made timely answer for residuary beneficiary Coats, moved the joinder of parties defendant and made request for discovery two years after commencement of the action, all without objection. The counsel for the parties consulted and conducted themselves throughout as though the trustee were a party in active defense of the action. That posture continued until the night before the trial when counsel for the life-beneficiary [as we have recounted] discovered the lapse in pleading. At the trial, the trustee offered an answer, but the court refused, although vested with discretion to allow the pleading out of time. *Sinclair Refining Co. v. Pankey & Minich*,

285 S.W. 138, 140[1] (Mo.App.1926). The answer alleged no issue of fact or law not already tendered by the residuary beneficiary Coats. The refusal by the trial court, where the failure to timely plead was from simple inadvertence of an office person, without prejudice or surprise to any other party, and where, notwithstanding formal answer counsel prepared for trial on the true issue, was a manifest abuse of discretion.

The propriety of refusal of the answer proffered by the trustee and the order of interlocutory judgment of default are not issues on appeal. The events which culminated in those judicial actions, however, bely impression of neglect by the trustee to defend the cause of action brought by the life-beneficiary. Rather, the conduct of the litigation on behalf of the estate was regular and, except for the harmless lapsus, diligent. A trustee who defends an action for the benefit of the trust estate with propriety may incur such costs, the expense of an attorney included, as are reasonable for the purpose. Scott on Trusts § 188.4 (3d ed. 1967). Within this principle, a testamentary trustee is entitled to a reasonable allowance out of the trust estate for counsel fees to respond to an action for declaratory judgment to construe an ambiguous trust provision. *Mercantile Trust Company v. Muckerman*, 377 S.W.2d 355, 360[3] (Mo. 1964). Nor was the refusal of the trustee to accede to the demand of the life-beneficiary for access to the corpus for support, unconditioned by her personal resources [which precipitated the defense of litigation] unreasonable in the face of the blatant uncertainty of the trust provision.

The court allowed the trustee an attorney fee of $1546.30 as a charge against

---

1. The petition by the wife sought a declaration to construe the will so as to allow incursion into the corpus of the trust estate for the support of the wife, at that time estimated by the pleadings to require $300 per month. In oral presentation before commencement of trial, counsel for the wife informed the court that the request for $300 per month was no longer valid and that the evidence would prove the cost of present support. The court understood the issue to fall within the principle of *Sumpter v. J.*

*E. Sieben Construction Company*, 492 S.W.2d 150, 153[8–11] (Mo.App.1973), that a party in default admits the cause of action except as to unliquidated damages and may nevertheless defend the action as to that element of proof. *Sumpter* has dubious application to the construction of a testament where the amount in controversy does not constitute damages but is merely incidental to conduct empowered by the testator. The parties make no issue of this ruling on appeal.

the estate. The contention of the life-beneficiary that the award was excessive rests on the assertion alone and raises no issue.

Accordingly the declaratory judgment of the trial court is reversed with directions that Article Second be construed as an absolute gift of support for Mildred DeArman Coats with discretion in the trustee to determine only the amount essential for that purpose. The judgment of the trial court of award of $1546.30 attorney fee to the trustee is affirmed.

All concur.